UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
MAR 13 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

AMERICAN CIVIL LIBERTIES UNION
125 Broad Street
New York, NY 10004

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street
New York, NY 10004,

          Plaintiffs,

v.

DEPARTMENT OF DEFENSE
1000 Defense Pentagon
Washington, DC 20301-1000

CENTRAL INTELLIGENCE AGENCY
Washington, D.C. 20505,

          Defendants.

Case: 1:08-cv-00437
Assigned To : Lamberth, Royce C.
Assign. Date : 3/13/2008
Description: FOIA/Privacy Act

## COMPLAINT FOR INJUNCTIVE RELIEF

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the First Amendment to the United States Constitution, seeking the immediate processing and release of agency records requested by plaintiffs American Civil Liberties Union and American Civil Liberties Union Foundation (collectively "ACLU") from defendants U.S. Department of Defense ("DoD") and Central Intelligence Agency ("CIA").

2. Plaintiffs' FOIA request ("Request"), which was submitted on April 20, 2007, seeks the release of unredacted records related to the hearings of fourteen prisoners

1

before the Combatant Status Review Tribunals ("CSRTs") at the U.S. Naval Base at Guantánamo Bay, Cuba ("Guantánamo").

3. Though defendant CIA has granted plaintiffs' request for expedited processing, defendant DoD has not. Neither defendant has released any records in response to plaintiffs' FOIA request. While defendants have published redacted versions of some of the records that plaintiffs seek, they have withheld critical portions in which the prisoners describe their treatment at the hands of U.S. personnel.

4. The publication of these prisoners' own descriptions of their treatment will not cause harm to national security. Defendants have continued to withhold these records not to protect any legitimate national security interest, but rather to conceal evidence of unlawful activity by U.S. personnel and to protect the government from embarrassment and criticism. Neither the FOIA nor the First Amendment permits the government to redact or censor material on these grounds.

5. Since this FOIA request was submitted, the government has formally confirmed that three of the fourteen prisoners were subjected to the brutal practice of "waterboarding," a notorious torture technique and the most controversial of the so-called "enhanced interrogation techniques" employed against prisoners in CIA custody. In light of this revelation, as well as many other disclosures about the treatment of these prisoners, any conceivable basis for withholding the prisoners' accounts of their treatment in U.S. custody has been wholly eviscerated.

## Jurisdiction and Venue

6. This Court has both subject matter jurisdiction of the FOIA claim and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B). This court also

has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701-706. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## Parties

7. Plaintiff American Civil Liberties Union is a nationwide, non-profit, non-partisan organization with over 500,000 members dedicated to the constitutional principles of liberty and equality.

8. Plaintiff American Civil Liberties Union Foundation ("ACLUF") is a separate 501(c)(3) organization that educates the public about civil liberties and employs lawyers who provide legal representation free of charge in cases involving civil liberties. The ACLUF is committed to ensuring that the treatment of prisoners within U.S. custody is consistent with the government's obligations under domestic and international law. The ACLUF has filed multiple FOIA requests – through which it has obtained and distributed to the public over 100,000 pages of documents – pertaining to the government's treatment of these prisoners.

9. Defendant DoD is a Department of the Executive Branch of the United States Government. DoD is an agency within the meaning of 5 U.S.C. § 552(f)(1).

10. Defendant CIA is a Department of the Executive Branch of the United States Government. CIA is an agency within the meaning of 5 U.S.C. § 552(f)(1).

## Combatant Status Review Tribunals

11. In 2002, the U.S. government established a high-security detention camp at Guantánamo, ostensibly for individuals captured during the war against the Taliban and Al Qaeda in Afghanistan. As of December 28, 2007, the DoD was holding approximately 275 prisoners at Guantánamo.

12. Prisoners at Guantánamo are presumptively classified as "enemy combatants" and do not enjoy the same rights as prisoners of war or U.S. citizens accused of crimes.

13. CSRTs are *ad hoc* administrative review bodies operated by the DoD to determine whether a prisoner has been properly classified as an "enemy combatant." CSRTs are composed of a panel of three military officers and an officer known as the "Recorder," who should "preferably" be a judge advocate and is appointed by the CSRT to collect and present all relevant evidence against the prisoner. Prisoners are not afforded any legal representation. Instead, prisoners are assisted by a member of the tribunal staff known as a "Personal Representative" who is neither a lawyer nor an advocate but who is responsible for explaining the nature of the CSRT process to the prisoner and for helping the prisoner present information to the tribunal. The CSRT may rely on secret evidence or on evidence obtained through coercive interrogation in making its determination.

14. If a CSRT determines that a prisoner is properly classified an enemy combatant, that prisoner may be held at Guantánamo indefinitely, subject only to an annual review of his status before an Administrative Review Board ("ARB"). In the event that a CSRT or ARB determines that a prisoner should no longer be classified as an enemy combatant, the prisoner must, in theory, be released.

15. Between July 2004 and March 2005, the DoD conducted 558 CSRT hearings at Guantánamo. These hearings were open to those representatives of the news media and independent observers who were present at Guantánamo at the time.

## The Fourteen Prisoners and Their Treatment in United States Custody

16. In September of 2006, President Bush revealed that fourteen so-called "high value detainees" had been transferred to Guantánamo after being held incommunicado for up to four years in secret CIA detention facilities, commonly known as "Black Sites." The President confirmed that the fourteen prisoners were among a larger group that had been detained by the CIA and subjected to "enhanced interrogation techniques."

17. It has been widely reported that these fourteen prisoners may have been subjected to torture or other cruel, inhuman, or degrading treatment, including prolonged sleep-deprivation, stress positions, exposure to extreme temperatures, and "waterboarding," during their detention. *See, e.g.*, Colin Freeze, *'High-Value' Detainee Rejects al-Qaeda doctrine*, Globe and Mail (Canada), Apr. 17, 2007 at A5 (reporting that Abu Zubaydah was subjected to waterboarding); Ed Pilkington, *I was Responsible for 9/11, from A to Z*, The Guardian (London), Mar. 15, 2007 (describing use of waterboarding and other harsh interrogation techniques against Khalid Sheik Muhammad); Mark Mazzetti, *Pentagon Revises Its Rules on Prosecution of Terrorists*, New York Times, Jan. 19, 2007 at A18 (reporting that many of the detainees may have been subject to interrogation methods like waterboarding); Josh Meyer and Greg Miller, *The Prisoner Problem*, Los Angeles Times, Sept. 7, 2006 at A1 (noting that unnamed officials have confirmed that the "alternative" interrogation procedures used by the CIA with the detainees included waterboarding).

18. On February 5, 2008, CIA Director Michael Hayden confirmed in testimony to Congress that three of the fourteen prisoners had been subjected to waterboarding, a technique that is intended to make the victim feel as if he is drowning and is categorically

prohibited under international law. Greg Miller, *Three Were Waterboarded, CIA Chief Confirms,* Los Angeles Times, Feb. 6, 2008.

## Closure of Combatant Status Review Tribunals for the Fourteen and Release of Redacted Transcripts

19. On March 6, 2007, the DoD announced that the CSRT hearings for these fourteen prisoners would begin on March 9, 2007.

20. DoD officials also revealed that, for the first time, the CSRTs would be closed to the media and outside observers. Notwithstanding the DoD's acknowledgement that virtually all of the material presented by the government in the hearings would be unclassified, DoD stated that it would release transcripts of the proceedings only after they were edited to remove any information that "could be dangerous to national security."

21. The CSRT hearings for the fourteen prisoners commenced on March 9, 2007. The fourteen transcripts from these hearings have been released in redacted form.

22. The redacted transcripts suggest that the government is improperly concealing allegations of torture and mistreatment raised by these prisoners in their hearings. For example, at the March 10, 2007 hearing of Khalid Sheikh Muhammad, the prisoner submitted an unclassified statement concerning abuse and mistreatment that occurred while he was interrogated and held in CIA custody between 2003 and 2006. When Mr. Muhammad was asked by the Tribunal President whether any statements made to his interrogators were the result of his treatment, he responded, but the details of his response were redacted from the transcript that was released.

23. At the March 14, 2007 hearing of Abd Al Rahim Hussein Mohammed Al Nashiri, the prisoner submitted an unclassified statement that he had confessed under

torture to the facts supporting the initial determination that he was an enemy combatant. Mr. Al Nashiri was asked by the Tribunal President to describe the methods that were used against him, but his entire answer to that question was redacted from the transcript that was released. Further details relating to his treatment were addressed at numerous points throughout the transcript, but were redacted in these instances as well.

24. At the March 30, 2007 hearing of Zayn Al Abidin Muhammad Husayn ("Abu Zubaydah"), the prisoner submitted an unclassified statement suggesting that he was suffering from seizures, memory loss, and the inability to speak, read, or write as a result of treatment he received while in U.S. custody. The Tribunal President himself noted Abu Zubaydah's allegations that he underwent "months of torture" at the hands of the Federal Bureau of Investigation ("FBI") and the CIA. However, the details of Abu Zubaydah's statements about his treatment were redacted at multiple points throughout the released transcript.

25. At the April 15, 2007 hearing of Majid Khan, the prisoner submitted both an unclassified, twelve-page written statement and an oral statement concerning abuse and mistreatment by the CIA, FBI, and others that took place while he was interrogated and held in U.S. custody between 2003 and 2006. Though the written statement (which the prisoner called his "torture report") was read into the record in its entirety, the portion that addressed his treatment prior to his September 2006 arrival at Guantánamo was redacted in full. Portions of Mr. Khan's oral statement were likewise redacted. The Tribunal President described the written statement "regarding the treatments that [Mr. Khan] had while [he was] in custody" as "rather detailed," commenting: "I understand that was probably difficult for you to present to us." However, when the Tribunal

7

President asked whether Mr. Khan had made any false, incorrect, or incomplete statements as a result of his treatment, Mr. Khan's response was redacted.

### The FOIA Request

26. There has been significant media interest in the CSRT process, as well as in the unprecedented decision to exclude the media from the CSRT proceedings involving these fourteen prisoners, since the hearings were held in early March 2007. *See e.g.*, Editorial, *Guantánamo Follies*, N.Y. Times, Apr. 6, 2007 at A18; Julian E. Barnes, *Secret Hearings for Top 9/11 Suspects*, L.A. Times, Mar. 13, 2007 at A11; Ben Fox, *U.S. Holds First Hearings for 'High Value' Guantanamo Prisoners*, Associated Press, Mar. 9, 2007; Julian E. Barnes, *Guantanamo Decision Is Under Fire*, L.A. Times, Mar. 8, 2007 at A14; Andrew Buncombe, *Trials of Guantanamo Suspects Begin Without a Lawyer or Reporter in Sight*, The Independent (London), Mar. 8, 2007 at 28; Josh White, *Hearing for 14 Guantanamo Detainees to be Held in Secret, Officials Say*, Wash. Post, Mar. 7, 2007 at A3.

27. That the government is plainly not in compliance with domestic and international prohibitions against torture also remains an issue of ongoing and widespread public concern. *See, e.g.*, Mark Mazzetti, *Pentagon Revises Its Rules on Prosecution of Terrorists*, N.Y. Times, Jan. 19, 2007 at A18; Josh Meyer and Greg Miller, *The Prisoner Problem*, L.A. Times, Sept. 7, 2006 at A1.

28. On April 20, 2007, plaintiffs submitted a request under the FOIA with defendants DoD and CIA for unredacted copies of the fourteen hearing transcripts and any records submitted by the Recorder and the prisoners and/or their Personal Representatives to the Tribunal.

29. Plaintiffs sought expedited processing of the Request on the grounds that the records sought are urgently needed by an organization "primarily engaged in disseminating information" in order to "inform the public about actual or alleged Federal government activity," and because the records sought also relate to a "breaking news story." 32 C.F.R. § 286.4(d)(3)(ii); 32 C.F.R. 1900.34(c)(2).

30. Plaintiffs sought a waiver or limitation of processing fees because plaintiffs qualify as a "representative[] of the news media," 32 C.F.R. § 286.28(e)(7); 32 C.F.R. § 1900.13(i)(2), and because disclosure is "likely to contribute significantly to the public understanding of the operations or activities of the United States Government and is not primarily in the commercial interest of the requester." 32 C.F.R. § 1900.13(b)(2); *see also* 32 C.F.R. § 286.28(d).

### Agency Responses

31. By letter dated May 4, 2007, defendant CIA granted plaintiffs' request for expedited processing and waived all fees associated with processing the request. The CIA also stated that "unavoidable processing delays" made it unlikely that the agency would "respond within the 20 working days the FOIA requires." The CIA maintained that it would "process [plaintiffs'] request as quickly as we can consistent with its expedited status."

32. By letter dated May 7, 2007, defendant DoD denied plaintiffs' request for expedited processing, in part because the topic of the Request had already received "broad and sustained media coverage." According to the letter, this ongoing coverage "belies [plaintiffs'] contention that the requested information relates to a breaking news story." The DoD also refused to grant or deny plaintiffs' request for waiver or limitation

of processing fees, contending that a determination could not be made "until a search for responsive records has been conducted and the volume and nature of any responsive records have been determined."

33.     To date, neither defendant has disclosed a single record in response to plaintiffs' Request, nor stated which records, if any, they intend to disclose. Neither defendant has offered any explanation for their withholding of the records in question.

34.     Defendants are improperly withholding the records sought by plaintiffs' Request.

### Plaintiffs' Entitlement to a Waiver or Limitation of Processing Fees

35.     Plaintiffs are entitled to a waiver of document search, review, and duplication fees because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); *see also* 32 C.F.R. § 286.28(d).

36.     As alleged above, numerous news accounts reflect the considerable public interest in the records plaintiffs seek. Given the ongoing and widespread media attention to this issue, the records sought in the Request will significantly contribute to public understanding of the operations and activities of the DoD. In addition, plaintiffs have no commercial interest in the requested disclosure. As described above, any information disclosed by the plaintiffs as a result of the Requests will be available to the public at no cost.

37.     Plaintiffs are also entitled to a waiver of document reproduction fees because the ACLU qualifies as a "representative of the news media" and the records are not

sought for commercial use. 32 C.F.R. § 286.28(e)(7); *see also* 5 U.S.C. § 552(a)(4)(A)(ii)(II) & (III).

38.   The ACLU is a representative of the news media for the purposes of FOIA because it is an entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn raw materials into a distinct work, and distributes that work to an audience. The organization publishes newsletters, news briefings, right-to-know handbooks and other materials that are disseminated to the public. These materials—including materials based on information obtained through the FOIA—are widely available to everyone, including tax-exempt organizations, not-for-profit groups, law students and faculty, for no cost or for a nominal fee through its public education department. The ACLU also disseminates information through its website, www.aclu.org, and through an electronic newsletter, which is distributed to subscribers by e-mail.

39.   Plaintiffs do not seek the requested information for commercial reasons. The ACLU summarizes, explains, and disseminates the information it gathers through FOIA at no cost to the public.

### Causes of Action

1.   Defendants' failure to make promptly available the records sought by plaintiffs' Request violates the FOIA, 5 U.S.C. § 552(a)(3)(A), and defendants' corresponding regulations.

2.   Defendants' failure to timely respond to plaintiffs' Request violates the FOIA, 5 U.S.C. § 552(a)(6)(A), and defendants' corresponding regulations.

3. Defendants' failure to make a reasonable effort to search for records responsive to the plaintiffs' Request violates the FOIA, 5 U.S.C. § 552(a)(3)(C), and defendants' corresponding regulations.

4. Defendant DoD's failure to grant plaintiffs' Request for a waiver of fees violates the FOIA, 5 U.S.C. § 552(a)(4)(A)(iii), and defendant's corresponding regulations.

5. Defendants DoD's failure to grant plaintiffs' Request for a limitation of fees violates the FOIA, 5 U.S.C. § 552(a)(4)(A)(ii)(II), and defendant's corresponding regulations.

6. Defendant DoD's failure to grant plaintiffs' Request for expedited processing violates the FOIA, 5 U.S.C. § 552(a)(6)(E)(iii), and defendant's corresponding regulations.

7. Defendants' censorship of the CSRT transcripts to prevent the dissemination of the prisoners' accounts of their treatment in U.S. custody violates plaintiffs' right under the First Amendment to the United States Constitution to hear the speech at issue.

## Requested Relief

WHEREFORE, plaintiffs pray that this Court:

A. Order defendants immediately to process all requested records;

B. Order defendants to conduct a thorough search for all responsive records;

C. Order defendants promptly to disclose the requested records in their entirety, and make copies available to plaintiffs;

D. Enjoin defendants from charging plaintiffs fees for the processing of their Request;

E. Award plaintiffs their costs and reasonable attorneys' fees incurred in this action; and

F. Grant such other relief as the Court may deem just and proper.

Dated: March 13, 2008

                              Respectfully submitted,

                              Ben Wizner
                              Jameel Jaffer
                              Amrit Singh
                              Judy Rabinovitz
                              American Civil Liberties Union Foundation
                              125 Broad Street
                              New York, NY 10004
                              Phone: 212-549-2500
                              Fax: 212-549-2583
                              bwizner@aclu.org

                              _/s/ [signature]_____
                              Arthur B. Spitzer (D.C. Bar. No. 235960)
                              American Civil Liberties Union
                                of the National Capital Area
                              1400 20th Street, N.W., Suite 119
                              Washington, D.C. 20036
                              Tel: (202) 457-0800
                              Fax: (202) 452-1868

                              Counsel for Plaintiffs

**I (a) PLAINTIFFS**

American Civil Liberties Union
American Civil Liberties Union Foundation

**DEFENDANTS**

United States Department of Defense
United States Central Intelligence Agency

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF — 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Arthur B. Spitzer
American Civil Liberties Union of the National Capital Area
1400 20th Street, NW, Suite 119
Washington, DC 20036,
Tel: (202) 457-0800

Case: 1:08-cv-00437
Assigned To : Lamberth, Royce C.
Assign. Date : 3/13/2008
Description: FOIA/Privacy Act

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

**○ A. Antitrust**
- ☐ 410 Antitrust

**○ B. Personal Injury/Malpractice**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant)
- ☐ 871 IRS Third Party 26

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

(4)

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ⊙ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☒ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⊙ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
Freedom of Information Act, 5 U.S.C. § 552, and First Amendment, for failure to release requested documents

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ _____   Check YES only if demanded in complaint
JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE March 12, 2008   SIGNATURE OF ATTORNEY OF RECORD _____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.