UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                      )
AMERICAN CIVIL LIBERTIES UNION,       )
                                      )
            Plaintiff,                )
                                      )
      v.                              )        Civil Action No. 08-00437 (RCL)
                                      )
DEPARTMENT OF DEFENSE,                )
                                      )
CENTRAL INTELLIGENCE AGENCY           )
            Defendants.               )
_____)

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

GREGORY G. KATSAS
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Director
JAMES J. SCHWARTZ (D.C. Bar No. 468625)
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.  Room 7140
Washington, D.C.  20530
Tel.: (202) 616-8267
Fax: (202) 616-8202
Email: james.schwartz@usdoj.gov

Attorneys for Defendants

## INTRODUCTION

Plaintiff in this Freedom of Information Act ("FOIA") action, the American Civil Liberties Union, seeks records from the Department of Defense (DoD) and the Central Intelligence Agency (CIA) regarding records related to the hearings of fourteen prisoners before the Combatant Status Review Tribunals ("CSRTs") at the U.S. Naval Base at Guantanamo, Bay Cuba.  Complaint at ¶ 2 (D.E. 1).  DoD and CIA have reviewed, processed and provided to plaintiff the requested documents.  See Declaration of Wendy M. Hilton, Associate Information Review Officer for the National Clandestine Service of the CIA.  ("Hilton Decl.") ¶ 13-20 (attached hereto as Exhibit A).  In making its FOIA production, the CIA and DoD withheld limited information pursuant to well-recognized exemptions for protecting classified national security information, personally identifying information and information protected from disclosure by statute.  The DoD and CIA's invocation of these exemptions was necessary and proper, as the detailed declarations submitted with this motion make clear.  Defendants are, therefore, entitled to summary judgment on plaintiff's FOIA claim.

## BACKGROUND

On April 20, 2007, plaintiff submitted a FOIA request to CIA and DoD requesting documents relating to 14 High-Value Detainees (HVDs) currently in detention at Guantanamo Bay, Cuba.  Hilton Decl. ¶ 9.[1]  Each of the detainees had a hearing before the CSRT in Spring

---

[1]    The fourteen HVDs that are the subject of Plaintiffs' FOIA request are Abu Faraj al-Libi, Walid Bin Attash, Khalid Sheikh Muhammad, Ramzi Bin al-Shib, Ahmed Khalfan Ghailani, Mohd Farik bin Amin (known as Zubair), Mustafa Al Hawsawi, Abd Al Rahim Hussein Mohammed (known as Al Nashiri), Bashir Bin Lap (known as Lillie), Ammar Al Baluchi, Rjduan Bin Isomuddin (known as Hambali), Zayn Al Abidin Muhammad Husayn (known as Abu Zubaydah), Majid Khan, and Guleed Hassan Ahmed.  Hilton Decl. n. 2.

-1-

2007.  Id.  Plaintiff's FOIA request, as modified, seeks unredacted versions of the CSRT hearing transcripts and copies of all records provided to the CSRT by the detainees or their Personal Representative.[2]  Id.  Prior to processing plaintiff's FOIA request, the CIA had already reviewed and redacted 6 of the 14 transcripts in order for DoD to make them publicly available.  Id. ¶ 14. The remaining 8 transcripts did not require any redactions.  DoD has made the six redacted and 8 unredacted transcripts publicly available through its website since August 9, 2007.  Id.

In response to plaintiff's FOIA request, CIA re-reviewed the transcripts according to FOIA standards and determined that the information reacted from the 6 transcripts could not be publicly released as all the information is exempt from disclosure under both FOIA Exemptions (b)(1) and (b)(3).  Id.  In its review, CIA made every effort to release as much information as possible and, as a result, most of the six redacted transcripts are not heavily redacted.  Id. ¶ 22-30.  Only one transcript has several pages redacted out of a total of 50 pages for that transcript. Id. at ¶ 26.  One transcript has only one sentence redacted while another has only a portion of one paragraph.  Id. ¶¶ 22, 25.  The remaining three transcripts only contain redactions on several of their pages.  Id. ¶¶ 23, 24, 27.

In addition to the CSRT transcripts, Plaintiff requested copies of all records provided to the CSRT by the detainees or their Personal Representative.  Many of these documents, such as prepared statements by the High Value Detainees, were read verbatim into the CSRT transcript and thus subsumed in Plaintiffs first document request.  Id. ¶ 17.  By agreement of the parties, CIA was not required to process any documents that were read verbatim into the CSRT

---

[2]  After consultation between the parties, plaintiff has agreed to drop its third request for documents - - copies of records provided to the CSRT by the Recorder - - and dismiss those portions of its complaint addressing that request.

transcript.  The CIA located 5 documents, totaling 13 pages, responsive to plaintiff's second request that were not publicly available and not included in the CSRT transcript.[3]  Id. ¶ 18.  The CIA processed these documents and released two in full.  Id. ¶ 19.  The CIA determined that some information in the remaining three documents could not be publicly released as the information is exempt from disclosure under both FOIA Exemption (b)(1) and (b)(3).  Id.  CIA redacted those three documents and produced them to Plaintiff.  Id. ¶ 20.

## ARGUMENT

### I.      FOIA and Summary Judgment Standards of Review

The Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential."  Center for Nat'l Sec. Studies v. DOJ, 331 F.3d 918, 925 (D.C. Cir. 2003) (citing John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (quoting H.R. Rep. 89-1497, 89th Cong., 2d Sess. 6 (1966))).  FOIA requires each federal agency to make available to the public a wide array of information, and sets forth procedures by which requesters may obtain such information.  See 5 U.S.C. § 552(a).  At the same time, FOIA exempts nine categories of information from disclosure, while providing that "[a]ny reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt under this subsection."  5 U.S.C. § 552(b).  Thus, while the FOIA requires agency

---

[3]      These five documents are: (1) a one-page diary excerpt of Abu Zubaydah; (2) a two-page written statement of Khalid Sheikh Muhammad; (3) a seven-page written statement of Hambali; (4) two pages of "Detainee Session Notes" prepared by the Personal Representative of Majid Khan and entered into evidence at his CSRT hearing; and (5) A one-page written statement of Bin Lap  responding to particular items of evidence.  CIA redacted information from the statements of Khalid Sheikh Muhammad, Hambali and Bin Lap.  Hilton Decl. ¶¶ 18, 19.

disclosure under certain circumstances, the statute recognizes "that public disclosure is not always in the public interest." Baldrige v. Shapiro, 455 U.S. 345, 352 (1982). The nine FOIA exemptions "reflect Congress' recognition that the Executive Branch must have the ability to keep certain types of information confidential." Hale v. DOJ, 973 F.2d 894, 898 (10th Cir. 1992), vacated on other grounds, 509 U.S. 918 (1993). As the Supreme Court has stressed, the statutory exemptions must be construed "to have a meaningful reach and application." John Doe, 493 U.S. at 152.

In determining whether an agency has met its burden of justifying nondisclosure of information in a FOIA action, the district court must accord substantial weight to affidavits submitted by the agency in support of claimed exemptions. 5 U.S.C. § 552(a)(4)(B). Indeed, as courts have recognized, in enacting the FOIA, Congress intended that courts give agency affidavits substantial weight in recognition of the agency's expertise, particularly in cases concerning questions of national security. Gardels v. CIA, 689 F.2d 1100, 1104-05 (D.C. Cir. 1982); Assassination Archives and Research Center v. CIA, 177 F. Supp. 2d 1, 5-6 (D.D.C. 2001).

Accordingly, summary judgment is regularly granted in FOIA cases on the basis of agency affidavits. Summary judgment is appropriate in a FOIA case unless the information provided by the agency is contradicted in the record or there is some evidence in the record of agency bad faith. Gardels, 689 F.2d at 1104-05; Assassination Archives, 177 F. Supp. 2d at 5-6; Windels, Marx, Davies & Ives v. Dep't of Commerce, 576 F. Supp. 405, 409-11 (D.D.C. 1983).

II.     **The Defendants Properly Withheld Information Pursuant to the FOIA Exemptions**.[4]

    A.     **CIA Properly Withheld Information Pursuant to Exemption 1.**

As detailed in her declaration, Wendy M. Hilton, Associate Information Review Officer for the National Clandestine Service of the CIA, holds original classification authority at the TOP SECRET level and declassification authority pursuant to section 1.3(c) of the Executive Order 12958, as amended.[5]  See, e.g., Hilton Decl. ¶ 5.  Ms. Hilton has personally reviewed all of the CSRT transcripts and records provided by detainees or their representative to the CSRT that are at issue in this case, and has determined the information withheld from the documents at issue in this case were properly classified pursuant to the Executive Order.  Hilton Decl. ¶ 32.  Ms. Hilton has determined that the information withheld under Exemption (b)(1) in the disputed documents warrants classification at the TOP SECRET , SECRET and/or CONFIDENTIAL level in the interest of national defense or foreign policy, pursuant to E.O. 12958 § 1.4, because their release could be expected to:  (a) reveal information concerning intelligence activities and intelligence sources and methods, see Hilton Decl. ¶ 38; and (b) reveal sensitive foreign relations or foreign activities of the United States.  See id.  Moreover, as detailed below, the CIA has met its burden under Exemption 1 and established that all of the withheld information properly falls within one or more of these classification categories established by the Executive Order.

---

[4]     The parties agree that since plaintiff's FOIA request requested specific documents which were found, processed and produced to plaintiff, there is no issue as to the adequacy of defendants search.  See Hilton Decl. ¶ 12.

[5]     E.O. 12958 was amended by E.O. 13292, effective March 25, 2003.  See Exec. Order No. 12958, 3 C.F.R. (1995), reprinted as amended in 50 U.S.C. § 435 note at 91 (supp. 2004); see also Exec. Order No. 13292, 68 Fed. Reg. 15315 (March 28, 2003).  All citations herein to E.O. 12958 are to the Order as amended by E.O. 13292.

### 1.     The Standards for Exemption 1

Exemption 1 protects records that are:  (1) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy, and (2) are in fact properly classified pursuant to Executive Order.  See 5 U.S.C. § 552 (b)(1).  Section 1.2(a)(4) of E.O. 12958, as amended, states that an agency may classify information that fits into one or more of the Executive Order's categories for classification when the appropriate classification authority "determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security."  68 Fed. Reg. 15315, 15315 (March 25, 2003).  In other words, under Exemption 1, FOIA requesters are "not entitled to records that have been properly classified."  Blazy v. Tenet, 979 F. Supp. 10, 23 (D.D.C. 1997).

Executive Order 12,958, as amended, "Classified National Security Information,"  lists three classification levels for national security information:

(1)     Information that, if subject to unauthorized disclosure, reasonably could be expected to cause damage to national security may be classified as CONFIDENTIAL;

(2)     Information that, if subject to unauthorized disclosure, reasonably could be expected to cause serious damage to national security may be classified as SECRET; and

(3)     Information that, if subject to unauthorized disclosure, reasonably could be expected to cause exceptionally grave damage to national security may be classified as TOP SECRET.

E.O. 12,958, as amended, § 1.2.

An agency can demonstrate that it has properly withheld information under Exemption 1 if it establishes that it has met the requirements of the Executive Order.  Substantively, the

agency must show that the records at issue logically fall within the exemption, i.e., that E.O.

12958, as amended, authorizes the classification of the information at issue.  Procedurally, the

agency must demonstrate that it followed the proper procedures in classifying the information.

See Salisbury v. United States, 690 F.2d 966, 970-73 (D.C. Cir. 1982); Military Audit Project v.

Casey, 656 F.2d 724, 737-38 (D.C. Cir. 1981).  An agency meeting both tests is then entitled to

summary judgment.  See, e.g., Abbotts v. NRC, 766 F.2d 604, 606-08 (D.C. Cir. 1985); Miller v.

Casey, 730 F.2d 773, 776 (D.C. Cir. 1984).

Agency decisions to withhold classified information under FOIA are reviewed de novo by

the district court, and the agency bears the burden of proving its claim for exemption.  See 5

U.S.C. § 552(a)(4)(B); Miller, 730 F.2d at 776.  Nevertheless, because agencies have "unique

insights" into the adverse effects that might result from public disclosure of classified

information, the courts must accord "substantial weight" to an agency's affidavits justifying

classification.  Military Audit Project, 656 F.2d at 738; cf. Miller, 730 F.2d at 776 (court must

"accord substantial weight to an agency's affidavit concerning the details of the classified status

of the disputed record").   Indeed, "the court is not to conduct a detailed inquiry to decide

whether it agrees with the agency's opinions."  Halperin v. CIA, 629 F.2d 144, 148 (D.C. Cir.

1980); see Weissman v. CIA, 565 F.2d 692, 697 (D.C. Cir. 1997) ("Few judges have the skill or

experience to weigh the repercussions of disclosure of intelligence information").  To do so

would violate the principle of according substantial weight to the expert opinion of the agency.

Cf. Stillman v. CIA, 319 F.3d 546, 548 (D.C. Cir. 2003) (in non-FOIA case, criticizing district

court for withholding deference ordinarily owed to national security officials).

## 2.      The CIA Records Are Protected by Exemption 1.

The Hilton Declaration shows that the CIA has followed the proper procedures for invoking Exemption 1 in this case.  Ms. Hilton, as an Associate Information Review Officer for the National Clandestine Service of the CIA, and under a written delegation of authority pursuant to E.O. 12,958, § 1.3(c), holds original classification authority at the TOP SECRET level.  Hilton Decl.  ¶ 5, 26.  As a result, Ms. Hilton is authorized to "conduct classification reviews and to make classification and declassification decisions."  Id.  The Exemption 1 material withheld by the CIA in this matter is "properly classified as TOP SECRET, SECRET and/or CONFIDENTIAL."  Id. ¶ 36.

Executive Order 12,958, as amended, provides that information shall not be classified unless it concerns one or more of eight categories.  E.O. 12,958, § 1.4.  In this case, the CIA's Exemption 1 withholdings implicate two categories for classified information:

- •      intelligence activities (including special activities), intelligence sources or methods, or cryptology, id. at § 1.4(c); and

- •      foreign relations or foreign activities of the United States, including confidential sources, id. at 1.4(d);

See Hilton Decl., ¶ 38.  The classified information withheld by the CIA concerns foreign relations or foreign activities of the United States and contains details about intelligence methods and activities.  Id. ¶ 38, 46-66.  This information falls within the § 1.4 categories outlined above. Id.

As detailed below, the CIA has properly withheld classified information that would disclose intelligence sources, activities, operations and methods and/or foreign relations information because such disclosure would cause serious and specific harm to national security.

The CIA's assessment of harm to intelligence sources and methods, 'is entrusted to the Director of Central Intelligence, not to the courts.'" Students Against Genocide v. Dep't of State, 257 F.3d 828, 835 (D.C. Cir. 2001) (quoting Fitzgibbon v. CIA, 911 F.2d 755, 766 (D.C. Cir. 1990)). Accordingly, the CIA's determination of potential harms, discussed below, merits "substantial weight" from the Court, see ACLU v. DOJ, 265 F. Supp. 2d 20, 27 (D.D.C. 2003), because "'[e]xecutive departments responsible for national defense and foreign policy matters have unique insights into what adverse affects [sic] might occur as a result of public disclosure of a particular classified record." Salisbury v. United States, 690 F.2d 966, 970 (D.C. Cir. 1982) (quoting S. Rep. No. 1200, 93rd Cong., 2d Sess. 12 (1974)); see also Frugone v. CIA, 169 F.3d 772, 775 (D.C. Cir. 1999) ("[m]indful that courts have little expertise in either international diplomacy or counterintelligence operations, we are in no position to dismiss the CIA's facially reasonable concerns"); Taylor v. Dep't of the Army, 684 F.2d 99, 109 (D.C. Cir. 1982) (agency's determination should be accorded "'utmost deference'") (quoting Halkin v. Helms, 598 F.2d 1, 9 (D.C. Cir. 1978)).   Thus, where an agency supplies a reasonably detailed affidavit, which identifies and describes the reasons for withholding Exemption 1 material, the Court "must take seriously the government's predictions about the security implications of releasing particular information to the public . . ." ACLU, 265 F. Supp. 2d at 28.[6]

### a.   The CIA Properly Withheld Information That Would Disclose Intelligence Activities.

Section 1.4(c) of Executive Order 12958, as amended, exempts intelligence activities

---

[6] To be sure, speculation as to the negative results likely to occur as a result of disclosure is necessarily suppositional.  However, courts have recognized that such speculation is inevitable, and that to require an actual showing of harm would be judicial "overstepping." See Halperin v. CIA, 629 F.2d 144, 149 (D.C. Cir. 1980).

from disclosure.  An "intelligence activity" refers to "the actual implementation of intelligence sources and methods in the operational context."  Hilton Decl. ¶ 46.  In the area of intelligence sources and methods, this Circuit has been strongly inclined to accept the agency's assessment that disclosure of such information will damage national security interests because the area is "necessarily a region for forecasts in which [the agency's] informed judgment as to potential future harm should be respected."  Gardels v. CIA, 689 F.2d, 1100, 1106 (D.C. Cir. 1982).  Indeed, the protection for information pertaining to sources and methods is so broad, that one federal appeals court has described it as a "near-blanket FOIA exemption," which is "only a short step [from] exempting all CIA records from FOIA."  Minier v. CIA, 88 F.3d 796, 801 (9th Cir. 1996) (internal quotation marks and citation omitted).[7]

---

[7]  The CIA must carefully review all potentially responsive records prior to any releases, to insure that important, confidential information is not released.  See Hilton Decl. ¶ 3.  This careful review is consistent with the recognition that the collection and preservation of information affecting the national security "is more akin to the construction of a mosaic than it is to the management of a cloak and dagger affair."  Halkin v. Helms, 598 F.2d 1, 8 (D.C. Cir. 1978).  One item's significance may frequently depend upon many other items of information. Indeed, this possibility is explicitly recognized in Executive Order 12958, which provides, "[c]ompilations of items of information which are individually unclassified may be classified if the compiled information reveals an additional association or relationship that meets the standards for classification under this order; and is not otherwise revealed in the individual items of information."  E.O. 12958, § 1.7(e).

In fact, "the realities of intelligence work . . . often involves seemingly innocuous sources . . . ."  CIA v. Sims, 471 U.S. 159, 176 (1985).  Indeed, "[e]ach individual piece of intelligence information, much like a piece of a jigsaw puzzle, may aid in piecing together bits and pieces of other information even when the individual piece is not of obvious importance itself."  Halperin v. CIA, 629 F.2d 144, 150 (D.C. Cir. 1980); see also Gould, Inc. v. GSA, 688 F. Supp. 689, 698 (D.D.C. 1988) ("Information drawn from a number of different sources can be benign when separately considered . . . [but] [w]hen combined . . . these various pieces of information can indeed become accusatory "); Salisbury v. United States, 690 F.2d 966, 971 (D.C. Cir. 1982) (acknowledging "mosaic-like nature of intelligence gathering").  Thus, "what may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item in its proper context."  Sims, 471 U.S. at 178-79 (quoting Halkin, 598 F.2d at 9).  Courts have upheld the withholding of information on grounds that it could be

Ms. Hilton identified information that reasonably could be expected to reveal intelligence activities such as sources and methods and confirmed it was properly classified.  Hilton Decl ¶¶ 44, 45.  Ms. Hilton explained that this information is highly sensitive because it often would reveal, "details regarding specific intelligence collection activities."  Id. ¶ 46.  Ms. Hilton goes on to explain that disclosure of the "existence (or non-existence) of a particular intelligence collection activity would reveal U.S. intelligence needs, priorities, and capabilities to foreign intelligence services or hostile organizations seeking to take advantage of any national security weakness."  Id. ¶ 47.

Generally, the damage caused by disclosure of intelligence activities information is obvious.  Foreign government services and hostile organizations would be put on notice that their activities and information are being monitored and analyzed by the CIA.  Id.  This would make future intelligence collection activities more difficult and, as a consequence, make the conduct of such operations significantly more dangerous.  Id.  Courts afford substantial deference to the government's assessment that disclosure of source information will damage national security interests because the area is "necessarily a region for forecasts in which [the government's] informed judgment as to potential future harm should be respected."  Gardels v. CIA, 689 F.2d, 1100, 1106 (D.C. Cir. 1982); see also Schrecker v. DOJ, 254 F.3d 162, 166 (D.C. Cir. 2001) (protecting intelligence sources because release would harm national security by "dissuading current and future sources from cooperating").

_____

compiled in a way such that sensitive information would be released.  See, e.g., Taylor v. Dep't of the Army, 684 F.2d 99, 104-05 (D.C. Cir. 1982); National Sec. Archive v. FBI, 759 F. Supp. 872, 877 (D.D.C. 1991); American Friends Serv. Comm. v. DOD, 831 F. 2d 441, 444-45 (3d Cir. 1987).

Specifically, the CIA invoked Exemption 1 to withhold information from the CSRT transcripts and documents provided to the CSRT regarding intelligence activities and/or methods involving:  (1) detention and conditions of confinement; and (2) information concerning interrogation methods.  The information provided in the Hilton Declaration demonstrates that the redacted  information "pertains directly to intelligence sources and methods and that disclosure of this information could be detrimental to an individual or to the CIA itself."  Snyder v. CIA, 230 F. Supp. 2d. 17, 23 (D.D.C. 2002).  The descriptions are in line with the kind of detail required by the courts in an Exemption 1 claim.  See, e.g., Goland v. CIA, 607 F.2d 339, 351 (D.C. Cir. 1979) (approving of CIA declaration which highlighted classified nature of information withheld and harms that would result from disclosure).

### (i)      Detention and Conditions of Confinement

The redacted information  at issue in this case relate to a "highly classified CIA program to capture, detain, and interrogate key terrorist leaders and operatives in order to prevent terrorist attacks (the "Program")."  Hinton Decl. ¶ 49.  As part of the Program, the President has authorized the CIA to establish terrorist detention facilities outside the United States, however the details of the program remain classified.  Id.  The President has also made clear that the CIA detention program will continue into the future.  Id. ¶ 54.  As described in the Hilton declaration, in addition to the levels of classification outlined in Executive Order 12958 § 1.2., section 4.3 provides that:

> specified officials may create special access programs upon a finding that the vulnerability of, or threat to, specific information is exceptional, and the normal criteria for determining eligibility for access applicable to information classified at the same level are not deemed sufficient to protect the information from unauthorized disclosure. The CIA is authorized to establish special access

> programs relating to intelligence activities, sources, and methods. These special
> access programs relating to intelligence are called Sensitive Compartmented
> Information (SCI) programs.

Hilton Decl. ¶ 52.  Due to the importance of the information and the grave damage to national

security if released, information regarding detention and conditions of confinement, including

where the detainees had been held, the details of their confinement, the employment of

alternative interrogation methods, and other operational details, has been placed in a TOP

SECRET//SCI program to enhance protection from unauthorized disclosure.  Id. ¶¶ 51, 53.

In her declaration, Ms. Hilton describes the specific harms that would result from the

release of this information.  First, disclosure of the intelligence sources and methods relating to

the Program contained in the documents requested by plaintiff, "is reasonably likely to degrade

the CIA's ability to effectively question terrorist detainees and elicit information necessary to

protect the American people."  Id. ¶ 53.  Second, the continued success of the Program relies on

the cooperation of foreign governments and use of effective interrogation techniques.

Unauthorized disclosure of these details of the Program "would undermine both of these

requirements."  Id. ¶ 54.  Finally, unauthorized disclosure of details regarding the conditions of

detention and specific alternative interrogation procedures reasonable could be expected to result

in exceptionally grave damage to the national security.  Id.  For example, the CIA redacted

several pages from the CSRT transcript of Abu Zubaydah because it contained detailed

information regarding his detention and conditions of confinement as well as intelligence

information he provided during his detention and interrogation.  Id. at 24.

Because their disclosure could reasonably be expected to cause these specific and

exceptionally grave harms to national security, information related to detention and conditions of

confinement are properly classified at the "TOP SECRET//SCI" level and withheld pursuant to E.O. 12958, as amended, § 1.4 (c) and exempt from disclosure pursuant to Exemption 1.

**(ii)      Interrogation Methods**

Another form of intelligence activity information redacted from the documents produced to plaintiff involves interrogation methods used by the CIA to acquire information regarding terrorist threats.  Hilton Decl. ¶ 55-58.  These interrogation methods have provided information regarding possible terrorist targets and methods of attacks on the United States, including information sufficient to "thwart a plot to fly a plane into the tallest building in Los Angeles."  Id. ¶ 56.  In addition, use of interrogation methods as part of the CIA detention program has disrupted plots that involved flying hijacked planes into Heathrow Airport and the Canary Wharf in London and attacking the U.S. consulate in Karachi, Pakistan, using car bombs and motorcycle bombs.  Id.  Further, information acquired in the Program through the use of interrogation methods has been essential in the capturing and questioning of senior al Qaeda operatives.  Id. "For example, interrogations of detainees produced information that provided initial leads to the locations of al Qaeda operatives, which led to their capture.  In addition, the United States gained valuable information that explained previously unknown details of al Qaeda, such as its organization, financing, communications, and logistics."  Id.

Because acquiring this type of information from terrorists is so valuable, al Qaeda and other terrorist organizations specifically train their members in counter-interrogation techniques. National security is threatened by release of questioning procedures and methods used by the CIA as part of the detention program because it would allow:

al Qaeda and other terrorists to more effectively train to resist such techniques, which

-14-

would result in degradation in the effectiveness of the techniques in the future.  If detainees in the CIA program are more fully prepared to resist interrogation, it could prevent the CIA from obtaining vital intelligence that could disrupt future attacks.

Hilton Decl. ¶ 55.

This information has been classified at the TOP SECRET//SCI level because interrogation methods are integral to the CIA's detention program.  Hilton Decl. ¶ 55.  "If the CIA were to reveal intelligence information gained through its use of interrogation methods, the information would no longer be useful in counterterrorism efforts."  Id. at 58.  In addition, the types of questions asked and specific questions to particular detainees must be protected because they could provide insight to the intelligence interests and knowledge of the CIA.  Id. at 57. Public disclosure could reveal, "what the CIA knew at the time and allow others to infer what the CIA did not know at the time."  Id.  This would allow other terrorists "to make judgments about the intelligence capabilities of the CIA and to anticipate the type of questioning they might undergo."  Id.  For example, CIA redacted information from the CSRT transcript of Khalid Sheikh Muhammad that revealed the interrogation methods he claims to have experienced, as well as the specific questions posed to him during interrogation which would reveal the intelligence interests of the CIA.  Id ¶ 27.

As the disclosure of this information could reasonably be expected to cause these specific and exceptionally grave harms to national security, along with the additional harms to associated with disclosure of intelligence activities, information related to alternative questioning techniques is properly classified at the "TOP SECRET//SCI" level and withheld pursuant to E.O. 12958, as amended, § 1.4 (c) and exempt from disclosure pursuant to Exemption 1.  See McErlean v. United States Dep't of Justice, Civ No. 97-7831-BSJ, 1999 WL 791680, at **5-6

(S.D.N.Y. Sept. 30, 1999) (holding that the government correctly withheld classified information that "identifies an CIA investigative unit which is assigned to, and specializes in, specific intelligence or counterintelligence operations" because disclosure "would reveal an intelligence operation which is still ongoing today").

For all of the foregoing reasons, the CIA properly withheld classified information that would reveal or identify the CIA's intelligence activities, operations, or methods.

### b.    The CIA Properly Withheld Foreign Relations and Foreign Activities of the United States Information

The CIA has also properly classified and withheld information concerning the foreign relations and/or foreign activities of the United States.  Section 1.4(d) of Executive Order 12958, as amended, exempts from disclosure foreign relations and activities information, including that concerning cooperative endeavors between the CIA and foreign governments' intelligence components.  "In this case, foreign governments have provided critical assistance to CIA counterterrorism operations, including but not limited to hosting of foreign detention facilities, under the condition that their assistance be kept secret."  Hilton Decl. ¶ 60.  The withheld information identifies the specific locations of the CIA's detention program's foreign locations as well as other "critical assistance that foreign countries have provided the to to the CIA's counterterrorism operations . . ."  Id.; see Snyder v. CIA, 230 F. Supp. 2d 17, 23 (D.D.C. 2002) (finding Exemption 1 satisfied by government explanation that "disclosure of the withheld information could reveal the names and location of covert foreign CIA installations . . .").  It is enough to uphold the CIA's assertion of Exemption 1 over information concerning these confidential relationships with other nations once it is established the confidential cooperation is

-16-

understood among the nations and ongoing.  See, e.g., Linn v. DOJ, Civ. No. 92-1406, 1995 WL

631847, at *26 (D.D.C. August 22, 1995) (Exemption 1 withholding of information concerning

cooperative relationship with foreign component was proper where FBI demonstrated "that the

United States has a present understanding with the foreign government at issue that shared

information will remain secret and that information concerning the relationship between the

United States and that government will also remain secret"); see also Navasky, 521 F. Supp at

129-30 .

     Ms. Hilton goes on to detail the specific harms that could reasonably be expected to result

from disclosure of this classified information.  Unauthorized disclosure of this information,

"would damage the CIA's relations with these foreign governments and could cause them to

cease cooperating with the CIA on such matters . . . If the United States demonstrates that it is

unwilling or unable to stand by its commitments to foreign governments, they will be less willing

to cooperate with the United States on counterterrorism activities."  Hilton Decl. ¶ 60  Thus,

disclosure of the classified information regarding the Program contained in the documents

provided to plaintiff are reasonably likely to damage foreign relations.  Id. ¶ 49; see also Malizia

v. U.S. Dep't of Justice, 519 F. Supp. 338, 343 (S.D.N.Y. 1981) ("Unauthorized disclosure of

foreign government information is presumed to cause at least identifiable damage to the national

security.").

     In her declaration, Ms. Hilton is able to provide a real world example of the damage to

national security that can result from disclosure of foreign relations information regarding the

CIA detention program:

Just prior to the President's 6 September 2006 speech announcing the transfer of detainees to Guantanamo Bay, the CIA provided certain foreign governments specific assurances that the CIA would protect the fact of their cooperation from disclosure. These liaison partners expressed their deep appreciation and highlighted that their continued cooperation was conditioned on the CIA's commitment and ability to keep their assistance strictly confidential.  In one instance, however, a particular foreign government reduced its cooperation with the CIA when its role in the terrorist detention program leaked to a third country whose national had been detained within the program. The foreign government lost the trust and cooperation of that third country in matters of their own national security.  Repair of the CIA's relationship with this foreign government came only through the senior-level intervention of the CIA Director personally apologizing for the leak.  Despite this significant effort, to this day the damage this one incident has caused to the CIA's relationship with the foreign government is incalculable, as the CIA can never be sure to what extent the foreign government is withholding vital intelligence necessary to the national security of the United States.

Hilton Decl. ¶ 61-62.  Therefore, the CIA has properly invoked Exemption 1 to withhold properly classified information regarding foreign relations.  See Halpern v. FBI, No. 94-CV-365A, 2002 WL 31012157, *7 (August 31, 2001) (holding that the FBI properly withheld information under Exemption 1 because disclosure would "identif[y] a foreign government component that expects its cooperative endeavors with the FBI to remain classified"); Malizia, 519 F. Supp. at 344 ("It is clear that, even without the presumption of identifiable damage to the national security that is accorded foreign government information, disclosure of such cooperation with foreign agencies could not only damage the (FBI's) ability to gather information but could also impair diplomatic relations.") (internal citations omitted); Navasky v. CIA, 521 F. Supp 128, 129-30 (S.D.N.Y. 1981) (holding that CIA declaration "justif[ied] a finding that the disclosure of the classified information at issue could reasonably be expected to cause identifiable damage to the national security in the field of foreign relations" where CIA invoked Exemption 1 to withhold information relating to CIA's clandestine activities in book publication and distribution done in support of foreign policy objectives and aimed at foreign targets).

-18-

The government is entitled to summary judgment on when agency affidavits contain "reasonable specificity" and are not called into question by contradictory evidence in the record or by evidence of agency bad faith.  See Krikorian v. United States Dep't of State, 984 F.2d 461, 464-65 (D.C. Cir. 1993).  The Hilton Declaration is reasonably specific; it provides the information required by E.O. 12958, and the records are properly classified as SECRET and/or TOP SECRET as they could reasonably be expected to cause serious or exceptionally grave damage to the national security of the United States.  Hilton Decl. ¶ 63.  The declaration also describes the withheld documents in as much detail as is possible "without 'compromis(ing) the secret nature of the information.'"  Goland, 607 F.2d at 351-52 (quoting Vaughn v. Rosen, 484 F.2d 820, 826-27 (D.C. Cir. 1973)).  Accordingly, these records are protected from disclosure by Exemption 1.

**B.     CIA Has Properly Invoked Exemption 3.**

The CIA has withheld records and information protected by FOIA Exemption 3.   DoD has also withheld a small amount of information pursuant to FOIA Exemption 3.   In examining an Exemption 3 claim, a court must determine, first, whether the claimed statute is a statute of exemption under FOIA, and, second, whether the withheld material satisfies the criteria of the exemption statute.  See CIA v. Sims, 471 U.S. 159, 167 (1985); Fitzgibbon v. CIA, 911 F.2d 755, 761 (D.C. Cir. 1990).

The CIA's Exemption 3 withholdings are based on two statutes:

(1)     Section 102A(i)(1) of the National Security Act of 1947, see 50 U.S.C. § 403-1(i)(1), which requires the CIA to protect intelligence sources and methods from unauthorized disclosure; and

(2)     Section 6 of the Central Intelligence Agency Act of 1949, see 50

-19-

U.S.C. § 403g, which provides that the CIA shall be exempt from the provision of any other law requiring the publication or disclosure of the organization, function, names, official titles, salaries, or numbers of personnel employed by the CIA.

See Hilton Decl., ¶ 67-69.

Because the threshold issue for the application of Exemption 3 is based on the statute invoked by the agency, the analysis is somewhat different.  As the D.C. Circuit has explained, "[e]xemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage."  Goland, 607 F.2d at 350-51.

### 1.    The CIA's Withholdings Under the National Security Act of 1947 Are Protected by Exemption 3.

The National Security Act of 1947 requires the Director of the CIA to safeguard information concerning CIA intelligence sources and methods.[8]  See 50 U.S.C. § 403-1(i)(1). The statute falls within the ambit of Exemption 3.  See, e.g., Sims, 471 U.S. at 167 ("Congress vested in the Director of Central Intelligence very broad authority to protect all sources of intelligence information from disclosure."); Krikorian, 984 F.2d at 465 ("It is well settled that section [403-3(c)(7)] falls within exemption 3."); Goland, 607 F.2d at 350-51; Snyder, 230 F. Supp. 2d at 22-23; Blazy, 979 F. Supp. at 23.

The CIA Director's obligation to protect information pertaining to agency sources and methods reflects Congress's intent to "give the [agency] broad authority to protect the secrecy

---

[8]  This information has also been withheld pursuant to Exemption 1 and is described in more detail in that part of this memorandum and in the Hilton Declaration.  See, supra, at II.A; Hilton Decl., ¶¶ 46-66, 70.

and integrity of the intelligence process." <u>Sims</u>, 471 U.S. at 170.

> Plainly the broad sweep of this statutory language comports with the nature of the Agency's unique responsibilities.  To keep informed of other nations' activities bearing on our national security the Agency must rely on a host of sources.  At the same time, the Director must have the authority to shield those Agency activities and sources from any disclosures that would unnecessarily compromise the Agency's efforts.

<u>Id.</u> at 169.  In a similar vein, the Ninth Circuit has noted that the "sources and methods" statutory mandate is a "near-blanket FOIA exemption," which is "only a short step [from] exempting all CIA records from FOIA."  <u>Minier</u>, 88 F.3d at 801.  Accordingly, the CIA need only demonstrate that the information "relates to intelligence sources and methods."  <u>Fitzgibbon</u>, 911 F.2d at 762.  Like the agency's determination under Exemption 1, the agency's determination under exemption 3 is entitled to "substantial weight and due consideration."  <u>Id.</u>; <u>Linder v. DOD</u>, 133 F.3d 17, 25 (D.C. Cir. 1998).

### 2. The CIA's Withholdings Under the Central Intelligence Agency Act of 1949 Are Protected by Exemption 3.

Section 6 of the Central Intelligence Agency Act of 1949 mandates that the CIA "shall be exempted from . . . the provisions of any other law which require the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency . . . ."  50 U.S.C. § 403g.  This statute also meets the requirements of Exemption 3.  <u>See</u>, <u>e.g.</u>, <u>Goland</u>, 607 F.2d at 350-51; <u>Sims</u>, 471 U.S. at 167; <u>Snyder</u>, 230 F. Supp. 2d at 22-23; <u>Blazy</u>, 979 F. Supp. at 23.

Because all the information withheld by the CIA in the six transcripts and three documents provided by the detainees to the CSRT would disclose functions of the CIA, that information is also properly withheld under this statute.  Hilton Decl. ¶¶21-30, 69.  As described

above, each of the classified categories of information contained in the documents at issue in this case relates to the CIA's ability to collect counterterrorism intelligence and perform counterintelligence functions which are core functions of the CIA.  Id. ¶ 69.  For example, the information redacted from the CSRT transcript of Majid Kahn provides detailed information regarding his capture as well as, "the conditions and locations of his detention, interrogation methods he claims to have experienced, intelligence information gained through his detention and interrogation, and information relating to foreign relations and foreign activities of the United States."  Hilton Decl. ¶ 26.  To reveal this information would force the CIA to disclose critical functions of the CIA and its personnel.  Id.  Similarly, the CIA redacted information in a written statement prepared by Hambali and submitted by him as an exhibit to his CSRT that contained information detailing the conditions of his interrogation, including specific questions he was asked, information regarding his capture and detention, interrogation methods he claims to have experienced, and information relating to foreign relations and foreign activities of the United States.  Id. at ¶ 29.  Again, this is information central to the mission of the CIA and would disclose critical functions of the CIA and its personnel.  Id.

The CIA withheld information pursuant to statutes that shield information from disclosure under the FOIA.  Accordingly, the information is protected by Exemption 3, and summary judgment should be granted for the CIA.[9]

---

[9]    Pursuant to Exemption 3 and Exemption 6, DoD redacted a small amount of information that would reveal the names of DoD personnel who are deployed to the Office for the Administrative Review of the Detention of Enemy Combatants Forward in Guantanamo Bay, Cuba.  Plaintiff does not challenge these redactions by DoD.

**C.  The CIA Has Reasonably Segregated Exempt Portions of the Documents.**

The FOIA requires agencies to release "any reasonably segregable portion of a record . . . after deletion of the portions which are exempt under this subsection."  5 U.S.C. § 552(b).  Consistent with this obligation, the CIA has provided plaintiff with as much non-exempt information as possible without compromising the interests in nondisclosure protected by the FOIA.  Hilton Decl. ¶ 3,71.  The CIA released all documents responsive to plaintiff's FOIA request either in whole or in part.  Hilton Decl. ¶ 71.  With respect to the documents released in part, Ms. Hilton conducted a line-by-line review of those documents to identify and release all reasonably segregable, non-exempt portions of the documents.  Id.  Based on that review, the CIA released all the information that could be reasonably segregated from the information withheld pursuant to Exemptions 1 and 3.  Id.

//


//


//

**CONCLUSION**

For the foregoing reasons, the Court should enter summary judgment for defendants.

Dated: June 30, 2008

Respectfully Submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
(D.C. Bar #418925)
Assistant Director

   /s/ James J. Schwartz
JAMES J. SCHWARTZ (D.C. Bar No. 468625)
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.  Room 7140
Washington, D.C.  20530
Tel.: (202) 616-8267
Fax: (202) 616-8202
Email: james.schwartz@usdoj.gov
Counsel for Defendants