UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF DEFENSE, CENTRAL INTELLIGENCE AGENCY <br><br> Defendants. | Civil Action No. 08-00437 (RCL) |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

In their opposition to defendants' motion for summary judgment, plaintiffs make numerous allegations and conclusions regarding the propriety of the Central Intelligence Agency's ("CIA") redaction of intelligence activities and methods foreign relations information. Plaintiffs challenge CIA's redaction largely on the basis of speculation and without the support of case law. Plaintiffs provide no evidence to overcome the strong presumption that the information was properly classified by the CIA and then appropriately redacted pursuant to FOIA Exemptions 1 and 3. Perhaps recognizing that they have no substantive opposition to the FOIA exemptions applied by CIA, plaintiffs have requested that this Court review the documents <u>in camera</u> to judge the applicability of those exemptions. <u>In camera</u> review is not necessary in this case because plaintiffs have not overcome the unrebutted presumption of good faith afforded an agency declaration and because the agency's declaration is sufficiently detailed to support the claimed exemptions.

I.    **In Camera Review Is Neither Appropriate Nor Necessary**

As explained in its Memorandum in Support of its Motion for Summary Judgment, (D.E. 9) summary judgment for defendants is appropriate on the basis of the CIA's detailed submissions to date, and plaintiffs' arguments to the contrary are meritless. Plaintiffs' request that the Court conduct an in camera review of the documents at issue runs contrary to judicial efficiency and the law of this Circuit, and should be rejected.

In camera review of documents withheld in response to a FOIA request is a matter of last resort. See Robbins Tire & Rubber Co., 437 U.S. at 224 (explaining that FOIA's in camera review provision is "designed to be invoked when the issue before the District Court could not be otherwise resolved"). Whether to conduct in camera review is left to "the broad discretion of the trial judge." Center for Auto Safety v. EPA, 731 F.2d 16, 20 (D.C. Cir. 1984). "The ultimate criterion is . . . [w]hether the district judge believes that in camera inspection is needed in order to make a responsible de novo determination on the claims of exemption." Id. (quoting Ray v. Turner, 587 F.2d 1187, 1195 (D.C. Cir. 1978)). But where, as here, an agency has met its burden with a sufficiently detailed submission, "in camera review is neither necessary nor appropriate." Hayden v. National Sec. Agency, 608 F.2d 1381, 1387 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980). Indeed, in camera review should not be "resorted to as a matter of course, simply on the theory that 'it can't hurt'." Quiñon v. Federal Bureau of Investigation, 86 F.3d 1222, 1228 (D.C. Cir. 1996)(cit. omitted); see also Hayden, 608 F.2d 1381, 1387 (reliance on agency submissions in lieu of in camera review "is in accordance with congressional intent that courts give agency affidavits 'substantial weight,' in recognition of the agency's expertise. In this scheme, in camera review is a "last resort" . . .); Local 3, Int'l Bhd. of Elec. Workers v. NLRB,

845 F.2d 1177, 1180 (2d Cir. 1988) ("[i]n camera review is considered the exception, not the rule").

In camera review is inappropriate in this case because the uncontested information in the CIA's declaration establishes that the CIA properly applied FOIA exemptions 1 and 3 to the documents at issue.  See Doherty v. DOJ, 775 F.2d 49, 52 (2d Cir. 1985) ("where the Government affidavits on their face indicate that the documents withheld logically fall within the claimed exemptions and there is no doubt as to agency good faith, the court should restrain its discretion to order in camera review"); Lead Indus. Ass'n, Inc. v. Occupational Safety and Health Admin., 610 F.2d 70, 88 (2d Cir. 1979) ("it is only where the record is vague or the agency claims too sweeping or suggestive of bad faith that a District Court should conduct an [i]n camera examination to look for segregable non-exempt matter;" "where it is clear from the record that an agency has not exempted whole documents merely because they contained some exempt material, it is unnecessary and often unwise for a court to undertake such an examination").

Plaintiffs argue in support of in camera review that the CIA's affidavit does not contain enough detail.  Pls. Opp. at 14-16.  This argument is without merit because the CIA's declaration provides as much detail as possible without revealing the highly classified and privileged information that is exempt from disclosure.  See Hilton Decl. ¶ 8.  Plaintiffs' conclusory arguments for in camera review are not supported by the law or facts of this case.  Moreover, in camera review particularly inappropriate because the documents at issue contain classified information that falls within the strict access provisions of a special access program as established in Executive Order 12958, as amended.  Hilton Decl. ¶ 52. Plaintiffs have provided

3

no evidence contradicting the sworn testimony of the CIA declarant, which is entitled to a presumption of good faith. See Safecard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir.1991) (affidavits submitted by an agency are "accorded a presumption of good faith"); Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994).

Even if Plaintiffs could overcome — and they can not — the unrebutted presumption of good faith afforded an agency declaration, the Court should not order in camera review of the highly classified and privileged documents before offering the CIA the opportunity to submit a classified declaration containing justifications for withholding that cannot be stated on the public record. See Earth Pledge Foundation v. CIA, 988 F. Supp. 623, 626 (S.D.N.Y. 1996) (requiring production of in camera declaration "demonstrating that the CIA's justifications for nondisclosure satisfied FOIA's statutory exemptions" where the court determined that it needed more information than the CIA was able to provide in a public declaration); see also, e.g., Campbell v. DOJ, 164 F.3d 20, 31 (D.C. Cir. 1998) ("On remand, the district court can either review the documents in camera or require the FBI to provide a new declaration. . . . The latter course is favored where agency affidavits are facially inadequate[.]") (citation omitted); The Nation Magazine v. Customs Serv., 71 F.3d 885, 892, 895 (D.C. Cir. 1995) (remanding for Customs to provide additional information and affidavits).

Plaintiffs furthermore cannot justify in camera review pursuant to the six factors set forth by the D.C. Circuit in Allen v. CIA: "(a) judicial economy, (b) the conclusory nature of the agency affidavits, (c) bad faith on the part of the agency, (d) disputes concerning the contents of the documents, (e) whether the agency requests an in camera inspection, and (f) the strong public interest in disclosure." See Donovan v. FBI, 806 F.2d 55, 59 (2d Cir. 1986), citing Allen v. CIA,

4

636 F.2d 1287, 1291 (D.C. Cir. 1980) (overruled on other grounds in <u>Founding Church of Scientology v. Smith</u>, 721 F.2d 828 (D.C. Cir. 1983)).

As to the first factor, judicial economy would not be served by <u>in camera</u> review in this case where the CIA has provided descriptions regarding the type of classified information contained within each document and has provided in depth explanations about why release of that information would harm national security; all of which provids sufficient detail for the Court to conduct the required level of review.

As to the second factor, as discussed above, the CIA's submission is not "conclusory". While the CIA is restricted in the amount of information it can provide on the public record, the affidavit provides "reasonable specificity" and is therefore sufficient to support summary judgment without the need for <u>in camera</u> review.  See <u>Krikorian v. United States Dep't of State</u>, 984 F.2d 461, 464-65 (D.C. Cir. 1993).

As to the third factor, plaintiffs specifically do not accuse the CIA of bad faith, let alone provide any evidence of impropriety.  Plaintiffs have furthermore made no claim and presented no evidence that would give rise to a credible dispute over the contents of the documents, and the agency does not request <u>in camera</u> review because summary judgment is appropriate on the basis of the Hilton Declaration.

Finally, there is not a strong public interest in disclosure of the redacted information.  To the contrary, there is a strong public interest in withholding this information.  As explained in the Hilton Declaration, release of the type of information redacted by the CIA would hamper its efforts in protecting the American people from future terrorist attacks as well as gaining the cooperation of foreign nations in the war on terror.   See Hilton Decl. ¶¶ 45, 56-58.

Additionally, although plaintiffs have provided the Court with a number of press clippings in the declaration of Nasrina Bargzie, see Decl. of Nasrina Bargzie ("Bargzie Decl."), attached to Plf's Opp. to Defs' Mot. For Sum. J. (D.E. 10.), upon examination, the vast majority of those news clippings relate to DoD and its activities, not the CIA. Thus, they cannot be used to support a public interest in release of the information or rebut the CIA's determination that the redactions in this case are necessary and appropriate.

For all of these reasons, in camera review is "neither necessary nor appropriate" in this case. See Hayden, 608 F.2d at 1387.

## II.     Plaintiffs' Arguments Regarding Exemption 1 and 3 Are Meritless

The documents at issue relate, inter alia, to the interrogations of specific individual detainees, the circumstances under which certain interrogation techniques were used, as well as information acquired from the detainees. See, Hilton Decl. ¶¶ 22-30. Plaintiffs argue that the CIA has not shown that the documents here at issue may be withheld under Exemption 1 or 3 because the release of the information they seek would allegedly not compromise the security of the United States. Plfs Opp. at 16-24. This contention is wholly without merit.

As set forth in more detail in the Government's opening brief, disclosure of details regarding the interrogations of specific detainees would provide persons hostile to the United States with information concerning the circumstances in which certain interrogation techniques are used, permitting them to discern patterns of interrogation and draw conclusions regarding the effectiveness of particular techniques. See Defs. Mem. at 9-16; Hilton Decl. ¶¶ 45-58. By analyzing such information here and in other cases, hostile parties could reconstruct—with exacting detail—CIA's interrogation methods in all cases and thus make highly informed

predictions about CIA's interrogation approach as to individuals in the future. See Hilton Decl. ¶¶ 45, 56-58; CIA v. Sims, 471 U.S. 159, 178 (1985) (cautioning that "bits and pieces of data" "may aid in piecing together bits of other information even when the individual piece is not of obvious importance in itself") (quotation omitted). Such disclosures would improve the ability of hostile individuals to counter CIA's methods and devise countermeasures to circumvent particular techniques. See Hilton Decl. ¶¶ 45, 56-58.

> A. **The details concerning the detainees capture, detention and interrogation were properly withheld under Exemption 1 and 3 as those details are classified and fall within the core functions of the CIA.**

Without any citation to case law, plaintiffs argue that "detainees and their personal experiences are not 'intelligence sources and methods.'" Plfs Opp. at 16. Plaintiffs illogically argue that by using proper FOIA exemptions, defendants have transformed the FOIA into a detention statute. Plfs Opp. at 17. Defendants are not detaining the High Value Detainees ("HVDs") that are the subject of plaintiffs' request because they have been exposed to classified interrogation techniques. Further, the CIA is not putting a "permanent gag on the individual's communication with the world." Plfs Opp. at 16. Rather, the CIA has redacted information that would expose interrogation methods used by the CIA, and also expose the information that was gained through use of those methods as well as information regarding the capture, detention and confinement of these prisoners. Hilton Decl. ¶ 45. If released, this information would damage national security and compromise the CIA's ability to perform its necessary core functions. The courts have routinely held that the government can withhold such information. See, e.g., Wolf v. CIA, 357 F. Supp. 2d 112, 116 (D.D.C. 2004), aff'd in part, rev'd in part on other grounds, 473 F.3d 370 (D.C. Cir. 2007) (classification warranted where "disclosure could reveal general CIA

methods of information gathering"); Hogan v. Huff, 00 Civ. 6753 (VM), 2002 WL 1359722, at *8 (S.D.N.Y. June 21, 2002) (information properly withheld under Exemption 1 where disclosure of the information "would potentially harm the agency by exposing its methods").

As the Supreme Court held in Sims, the CIA's discretion in determining what would constitute an unauthorized disclosure of intelligence sources and methods is "very broad." 471 U.S. at 169-70. The Court made clear that the judiciary must defer to the CIA's judgments with respect to disclosures that affect intelligence sources and methods:

> [I]t is the responsibility of the Director of Central Intelligence, not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the Agency's intelligence-gathering process.

Id. at 180; see also Hunt v. CIA, 981 F.2d 1116, 1120 (9th Cir. 1992) (describing CIA's discretion to withhold information under Exemption 3 as "a near-blanket FOIA exemption"); Arabian Shield Dev. Co. v. CIA, No. 3-98-CV-0624-BD, 1999 WL 118796, at *4 (N.D. Tex. Feb. 26, 1999) (the CIA's determination of what would "lead to the unauthorized disclosure of intelligence sources and methods" is "almost unassailable"). Such broad discretion is justified because even "superficially innocuous information" might reveal valuable intelligence sources and methods. Sims, 471 U.S. at 178.

### B. The information redacted by the CIA has not been officially disclosed.

Plaintiffs contend that Exemption 1 does not apply based on their speculative belief the information at issue has been publicly disclosed. Plfs Opp. at 18-22. In support, plaintiffs rely on various press articles or public statements regarding interrogation techniques and conditions of confinement. See Bargzie Decl. As an initial matter, the vast majority of the information

contained within the declaration concerns the activity of Department of Defense, not the CIA, and is therefore irrelevant to the activities of the CIA and whether that agency has properly classified information.

Plaintiffs' argument furthermore misapprehends the harm that reasonably could be expected to result if specific details about the use of individual interrogation techniques, including details about the interrogations of specific individual detainees, were disclosed. Although government agencies have publicly released *general* information concerning interrogations, see Plfs Opp. at 21-22, disclosure of the particular techniques used with particular detainees would provide a far more detailed picture of the CIA's interrogation process. See Hilton Decl. ¶¶ 45, 56-58. The courts have recognized the harm to counterterrorism and law enforcement efforts that would likely to result from disclosure of the application of particular techniques in particular circumstances. Cf. Blanton v. U.S. Dep't of Justice, 63 F. Supp. 2d 35, 49-50 (D.D.C. 1999) (proper to withhold under Exemption 2 the manner and circumstances in which particular law enforcement technique is employed even where technique itself has been disclosed); Wickline v. FBI, No. 92-1189 (SSH), 1994 WL 549756, at *5 (D.D.C. Sept. 30, 1994) (even commonly known procedures are protected from disclosure when "circumstances of their usefulness . . . may not be widely known" (internal quotation marks omitted)).

Second, and more to the point, the fact that information may have been publicly disclosed alone is insufficient: an agency's refusal to release classified information "is generally unaffected by whether the information has entered the realm of public knowledge." Halpern v. FBI, 181F.3d 279, 294 (2d Cir. 1999). There is only a "limited exception" to this rule, "where the government has officially disclosed the specific information the requester seeks." Id.; accord

Hudson River Sloop Clearwater, Inc. v. Dep't of the Navy, 891 F.2d 414, 421 (2d Cir. 1989). But this waiver of secrecy by official disclosure is narrowly defined, as the courts have "unequivocally recognized that the fact that information resides in the public domain does not eliminate the possibility that *further disclosures can cause harm* to intelligence sources, methods and operations." Fitzgibbon v. CIA, 911 F.2d 755, 766 (D.C. Cir. 1990), (emphasis added); accord Wolf v. CIA, 473 F.3d 370, 378 (D.C. Cir. 2007) ("the fact that information exists in some form in the public domain does not necessarily mean that official disclosure will not cause harm"). Because of the possibility of additional harm that could result from an official acknowledgment of previously disclosed information, the courts are "bar[red] . . . from prying loose from the government even the smallest bit of information that is properly classified." Afshar v. Department of State, 702 F.2d 1125, 1130 (D.C. Cir. 1983), accord Public Citizen v. Dep't of State, 11 F.3d 198, 201 (D.C. Cir. 2003).

Public confirmations of the mere *existence* of the CIA Detention Program, or the use of certain interrogation techniques, does not undermine the ability to classify specific aspects of the Detention Program. Limited declassification of certain information concerning a classified program--in this instance, the program's existence, as well as some interrogation techniques that may or may not have been used on the detainees at issue--does not require full disclosure of the other, still-classified aspects of that program. See, e.g., Ctr. for Nat'l Security Studies v. U.S. Dep't of Justice, 331 F.3d 918, 930-31 (D.C. Cir. 2003) ("The disclosure of a few pieces of information in no way lessens the government's argument that complete disclosure would provide a composite picture of its investigation and have negative effects on its investigation."); Salisbury v. United States, 690 F.2d 966, 971 (D.C. Cir. 1982) ("The fact of disclosure of a

similar type of information in a different case does not mean that the agency must make its disclosure in every case."); Military Audit Project v. Casey, 656 F.2d 724, 752-53 (D.C. Cir. 1981) (rejecting the suggestion that "because the government has revealed some documents it previously considered too sensitive to release, it now must reveal all"). Numerous other facts about the program, and the CIA's intelligence operations in general, remain highly classified despite the government's limited declassification of the program's existence. Forcing the disclosure of such facts based on the extremely limited public description of the CIA terrorist detention and interrogation program would, as Ms. Hilton explains, cause irreparable harm to the national security by compromising sensitive intelligence sources and methods. See Hilton Decl. ¶¶ 46-58.

Similarly, the reports by media outlets, public interest groups, and international organizations cited in the Bargzie Decl. do not undermine the ability to properly classify the statements of the detainees. The statements in these reports, even if made by individuals who allege first-hand knowledge, cannot work to declassify information that the Ms. Hilton affirms is properly classified. See, e.g., Terkel v. AT & T Corp., 441 F. Supp. 2d 899, 913-14 (N.D. Ill. 2006) (rejecting contention that media reports about NSA surveillance program render state secrets privilege inapplicable); see also El-Masri v. United States, 479 F.3d 296, 311 n.5 (4th Cir. 2007) (declining to endorse plaintiff's theory that information is ineligible for protection under the state secrets privilege simply because it has been published in the news media). Classified information is not considered to be "in the public domain *unless there had been official disclosure of it.*" Knopf v. Colby, 509 F.2d 1362, 1370 (4th Cir. 1975) (emphasis added). Thus, the test for waiver by official disclosure is a "stringen[t]" one. Public Citizen, 11 F.3d at 202.

"Official disclosure" does not mean public discussion of the information by overt sources. To the contrary, a finding that classified information has been "officially disclosed" requires that: (1) the information at issue must be as specific as the information that has been publicly disclosed; (2) the disputed information must exactly match the information publicly disclosed, *e.g.*, it must involve the same time period or same operation; and (3) the information sought to be released must already have been publicly released through "an official and documented disclosure." Fitzgibbon v. CIA, 911 F.2d 755, 765 (D.C. Cir. 1990) (citing Afshar v. Dep't of State, 702 F.2d 1125, 1133 (D.C. Cir. 1983)); accord Afshar, 702 F.2d at 1133 (plaintiffs bear burden of showing specific public information that duplicates information withheld). This test is applied with "exactitude" out of deference to " 'the Government's vital interest in information relating to national security and foreign affairs.'" Wolf, 473 F.3d at 378 (quoting Public Citizen, 11 F.3d at 203 (test presents a "high hurdle" due to government interest in national security)). In fact, the test is applied with such exactitude that nearly every decision on this subject denies a waiver based on official disclosure. Plaintiffs have not alleged, let alone demonstrated, that the information regarding intelligence activities and methods and foreign relations and foreign activities of the United States has been officially disclosed under this rigorous standard.

**C.    The CIA did not withhold documents to protect intelligence activities that are outside its statutory mandate and proscribed by law**.

Plaintiffs' argument that the intelligence methods used by the CIA are illegal and outside the scope of the agency's authority, see Plfs Opp. at 24-29, is incorrect. Section 1.7(a) of the Executive Order does not bar the Government from classifying information that might contain evidence of illegality, but rather bars the Government from classifying otherwise unclassified

12

information "in order to"— i.e., for the purpose of—concealing violations of law. 68 Fed. Reg. at 15318. To implicate Section 1.7(a), there must be evidence of improper motive or intent on the part of the classifying authority. Billington v. DOJ, 11 F. Supp. 2d 45, 58 (D.D.C. 1998) (rejecting argument that FBI violated Executive Order provisions barring classification in order to conceal violations of law or prevent embarrassment where plaintiff did "not provide any proof of the FBI's motives in classifying the information" and there was no evidence "that the FBI was involved in an attempt to cover-up information"), aff'd in part, vacated in part, 233 F.3d 581 (D.C. Cir. 2000); Canning v. U.S. Dep't of Justice, 848 F. Supp 1037, 1047 (D.D.C. 1994) (rejecting argument that information was classified in order to prevent embarrassment or conceal illegal activities because "the Court finds no credible evidence that the agency's motives for its withholding decisions were improper or otherwise in violation of [prior version of] E.O. 12356"); United States v. Abu Marzook, 412 F. Supp. 2d 913, 923 (N.D. Ill. 2006) (rejecting argument that information had been improperly classified to prevent embarrassment and to conceal Israel's use of illegal interrogation methods because, inter alia, "there is simply no evidence that these materials [were] classified merely to prevent embarrassment to Israel"); Arabian Shield, 1999 WL 118796, at *4 (rejecting argument that information was improperly classified where plaintiff had "no[t] offered evidence that the CIA classified the requested information for the purpose of concealing a crime").

 Ms. Hilton swore in her declaration that the CIA had no improper motive in classifying the information at issue:

> With respect to the information relating to CIA intelligence activities, sources, and methods, and foreign relations and foreign activities, described in section IV.A.2. of this declaration for which FOIA Exemption (b)(1) is asserted in

> this case, I have determined that this information has not been classified in order to conceal violations of law, inefficiency, or administrative error; prevent embarrassment to a person, organization or agency; restrain competition; or prevent or delay the release of information that does not require protection in the interests of national security.

Hilton Decl. ¶ 41. Plaintiffs have offered no evidence that the CIA's motive for classifying the information at issue in this case was improper. Ms. Hilton's representations to the contrary are unassailable.

Rather than addressing the CIA's motives in classifying the documents at issue, Plaintiffs argue incorrectly that, under E.O. 12958, as amended, "illegal government activity" may be classified only "where disclosure would reveal intelligence methods *separate and apart from* the government conduct in question." Plfs. Opp. at 27 (emphasis in original). As explained above, Section 1.7(a) of E.O. 12958, as amended, does not address the substance of what may be classified, but rather prohibits the classification of information with the intent of concealing a violation of law. See Wilson v. Dep't of Justice, Civ.A. No. 87-2415-LFO, 1991 WL 111457, at *2 (D.D.C. June 13, 1991) ("even if some of the information withheld were embarrassing to Egyptian officials, it would nonetheless be covered by Exemption 1 if, independent of any desire to avoid embarrassment, the information withheld were properly classified"). Plaintiffs' cases do not hold otherwise. See Plfs Opp. at 25. Arabian Shield made clear that Section 1.7(a) turns on intent:

> Plaintiff argues that the requested information was improperly classified by the CIA because "national security secrecy cannot be used to conceal information pertaining to the commission of a crime . . ." (Plf. Motion at 1). However, a careful reading of the Executive Order compels a different conclusion. The order provides that "[i]n no case shall information be classified in order to . . . conceal violations of law, inefficiency, or administrative error." Exec. Order 12958 § 1.8(a)(1) (emphasis added). Section 1.8 thus prohibits an agency from classifying

> documents as a ruse when they could not otherwise be withheld from public disclosure. It does not prevent the classification of national security information merely because it might reveal criminal or tortious acts.

Arabian Shield, 1999 WL 118796 at *4 (emphasis in original). Moreover, plaintiffs' reliance on Bassiouni v. CIA, 392 F.3d 244, 245- 47 (7th Cir. 2005), is misplaced, as it did not address E.O. 12958's bar against the classification of information "in order to" conceal a violation of law or prevent embarrassment. .

In any event, Plaintiffs' allegations of CIA wrongdoing are entirely speculative. Cf. National Archives and Records Admin. v. Favish, 541 U.S. 157, 174 (2004) (observing that "[a]llegations of government misconduct are easy to allege and hard to disprove") (internal quotation omitted). Moreover, plaintiffs are incorrect to suggest that press reports and the CIA's public statements prove that the CIA classified illegal activities. See Plfs Opp. at 26. Plaintiffs cannot rely on mere press reports, as "[t]here is an important distinction between official and unofficial disclosures." See Rubin v. CIA, No. 01 Civ. 2274 (DLC), 2001 WL 1537706, at *5 (S.D.N.Y. Dec. 3, 2001) (rejecting argument that CIA must disclose information that had "already been published" in a book because "[t]here is an important distinction between official and unofficial disclosures."). In addition, the CIA's public statements, although apparently facilitating plaintiffs' speculation, do not demonstrate an improper motive in the classification of its intelligence methods. See Canning, 848 F. Supp. at 1048 ("To the extent that the Plaintiffs contend that release of this information would be an embarrassment to the government, the Court finds it difficult to believe that the agency's withholding decisions were motivated by a desire to improperly conceal such facts. If anything, the agency has released sufficient information to facilitate such speculation about the existence of a potentially inappropriate investigation."). For

all of these reasons, there is no evidence that the CIA had an improper motive in classifying portions of the documents requested by plaintiffs' FOIA request.

### D.   The CIA properly withheld HVD statements that might be either false or exaggerated.

Plaintiffs' also take issue with the fact that CIA might have redacted information characterized as false or exaggerated. However, redaction of such information in the context of intelligence activities and methods is routine and proper. Logically, redacting only truthful information and releasing false information could provide insights into the information that was redacted. As Ms. Hilton explains in her declaration:

> False or exaggerated allegations by the HVDs about the classified details of the Program, however, also must be treated as classified information. To do otherwise would have the effect of allowing accurate, highly classified information about the Program to be revealed by the HVDs. If only truthful statements were redacted, a detainee with knowledge of classified facts could easily manipulate the process to reveal those classified facts . . . Allowing the HVDs to speak freely about the CIA program will allow them to directly reveal the classified information about the Program that the Government must protect.

Hilton Decl. ¶¶ 65, 66.

By way of example, suppose detainee X was detained in Country A for a period of time. Then he alleges he was detained in Country A and Country B. If the CIA redacts only Country A, it (1) confirms to the detainee that the he was in fact held in Country A, which reveals classified information; (2) it also confirms that detainee X was not held in country B, which allows, by a process of elimination, for a determination to be made as to where detainee X was held, especially if detainee X alleges he was held in numerous countries. The situation becomes more complicated if detainee X says "I was held with detainee Y at dark prisons in Countries A and B." To redact information based on its truth or falsity would be difficult, especially if both

detainees were held together in Country A, but not Country B. There is no logical or safe way to determine which part of that statement should be redacted.

As to interrogation methods and conditions of confinement, if only true statements were redacted, "HVDs with access to classified information regarding actual conditions and techniques could paint a picture of those conditions and technique used and not used by making repeated allegations about conditions of confinement and interrogation techniques. The continued success of the [CIA Detention] Program depends as much on concealing what interrogation methods are not approved as it does on concealing what methods are approved." Hilton Decl. ¶ 65. Thus, for consistency, CIA properly redacts all allegations related to classified facts, be they facts about detention or interrogation techniques, which is the best way to maintain national security.

### III.     Plaintiffs Have No First Amendment Right to Hear Classified Information

Finally, plaintiffs erroneously argue that redaction of intelligence activities foreign relations information violates plaintiffs' First Amendment right to hear and receive speech. See Plfs Opp. at 29-31. Plaintiffs, in support of this proposition, rely on inapplicable precedent regarding the right to receive speech in contexts that have no bearing on this case, *e.g.* licensing of radio stations, censorship of obscene materials, right to engage in and hear speech critical of the government. See Plfs Opp. at 31-32, citing, Red Lion Broad. Co. v. F.C.C., 395 U.S. 367 (1969); Stanley v. Georgia, 394 U.S. 557 (1969); Buckley v. Am. Constitutional Law Found., 525 U.S. 182 (1999). Defendants do not disagree with any of the black letter law cited by plaintiffs. However, laintiffs have cited no case law to support the proposition that they are entitled to hear classified information.

Plaintiffs' argument, if accepted, would vitiate the FOIA, as well as Executive Order 12958, as amended. Any time a government agency redacted information pursuant to any FOIA exemption or classified information based on Executive Order 12958, as amended, a plaintiff could argue that their First Amendment rights to hear or receive that redacted speech has been violated. This is obviously an overstatement of the law. "There is no inherent constitutional right of access to government information--whether classified or unclassified--as the existence of the Freedom of Information Act, and its host of exemptions, both amply demonstrate." Pfeiffer v. C.I.A., WL 80869 at *4 (D.D.C. 1994), citing Houchins v. KQED, Inc., 438 U.S. 1, 15 (1978) (plurality opinion). In fact, the First Amendment right to receive information, "only requires that the government not engage in conduct that impermissibly silences a willing speaker." Martin v. E.P.A., 271 F.Supp.2d 38, 48 (D.D.C. 2002). In the present case, the government properly classified highly sensitive information, the release of which could cause grave harm to national security. As this information is not publically available, plaintiffs poses no First Amendment right to hear this information. Bartel v. F.A.A., 617 F.Supp. 190, 195 (D.D.C. 1985).

Moreover, the courts have long recognized the government has a compelling interest in limiting dissemination of material that affects national security. Indeed, nowhere does the Government have a more compelling interest than protecting information that is vital to national security. Haig v. Agee, 453 U.S. 280, 307 (1981) ("It is 'obvious and unarguable' that no governmental interest is more compelling than the security of the Nation." (cits. omitted)); Snepp v. U.S. 444 U.S. 507, 510 n.3 (1981) ("The Government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service."); United

States v. Al-Arian, 267 F.Supp.2d 1258, 1266-67 (M.D.Fla. 2003) ("This Court cannot think of a more compelling or substantial interest that the United States possesses than protection of classified information."). It is a long recognized principle that "certain forms of speech, precisely because of their content, are not entitled to First Amendment protection." Bullfrog Films, Inc. v. Wick, 646 F.Supp. 492, 503 (C.D. Cal. 1986), citing, Roth v. United States, 354 U.S. 476 (1957) (obscenity) and Chaplinsky v. New Hampshire, 315 U.S. 568 (1942) ("fighting words"). In fact, in Haig v. Agee, the Supreme Court held, in response to Agee's contention that government action unconstitutionally limited his right to criticize the government, that Agee's statements "clearly were not protected by the Constitution" because the statements jeopardized national security. Haig, 453 U.S. at 308-09. Thus, defendants' utmost compelling interest in protecting information vital to national security greatly outweighs any right plaintiffs might have to hear the speech at issue.

In this case, defendants, through the Hilton Declaration, have described in great detail the compelling government interest in withholding the redacted information, and have further demonstrated that the CIA narrowly tailored its redactions only to information concerning intelligence activities and methods, and foreign relations and foreign activities of the United States. Thus, plaintiffs First Amendment arguments are without merit and cannot support denial of defendants' request for summary judgment.

**CONCLUSION**

For the foregoing reasons, the Court should enter summary judgment for defendants.

Dated: July 31, 2008

> Respectfully Submitted,
>
> GREGORY G. KATSAS
> Assistant Attorney General
>
> JEFFREY A. TAYLOR
> United States Attorney
>
> ELIZABETH J. SHAPIRO
> (D.C. Bar #418925)
> Assistant Director
>
>   /s/ *James J. Schwartz*
> JAMES J. SCHWARTZ (D.C. Bar No. 468625)
> Senior Counsel
> United States Department of Justice
> Civil Division, Federal Programs Branch
> 20 Massachusetts Avenue N.W.  Room 7140
> Washington, D.C.  20530
> Tel.: (202) 616-8267
> Fax: (202) 616-8202
> Email: james.schwartz@usdoj.gov
> Counsel for Defendants