UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————
                                        )
AMERICAN CIVIL LIBERTIES UNION,        )
        *et al.,*                       )
                                        )
            Plaintiffs,                 )
                                        )
        v.                              )        Civil Action No. 08-00437 (RCL)
                                        )
DEPARTMENT OF DEFENSE,                  )
CENTRAL INTELLIGENCE AGENCY             )
                                        )
            Defendants.                 )
———————————————————)

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

In their opposition to defendants' motion for summary judgment, Plaintiffs make

numerous allegations and conclusions regarding the propriety of the Central Intelligence

Agency's ("CIA") redaction of intelligence activities and methods and foreign relations

information.  Plaintiffs challenge CIA's redaction largely on the basis of speculation and without

the support of case law.  As demonstrated below, the CIA properly redacted the documents at

issue in this case pursuant to Exemptions 1 and 3 and Plaintiffs' unsupported allegations

regarding improper classification and public disclosure of information are insufficient to deny

summary judgment in favor of defendants.

**I.      Plaintiffs' Arguments Regarding Exemption 1 and 3 Are Meritless**

The documents at issue relate, <u>inter alia</u>, to the interrogations of specific individual

detainees, the circumstances under which certain interrogation techniques were used, as well as

information acquired from the detainees.  <u>See</u>, August 28, 2009 Declaration of Wendy Hilton

Decl. ("Second Hilton Decl.") ¶¶ 27-34, attached as Ex. A to Defendants Memorandum in Support of Summary Judgment [D.E. 21].  Plaintiffs argue that the CIA has not shown that the documents here at issue may be withheld under Exemption 1 or 3 because the release of the information they seek would allegedly not compromise the security of the United States.  See Plaintiffs' Opposition to Defendants Motion for Summary Judgment ("Plfs. Opp.") at 8-26 [D.E. 23].  This contention is wholly without merit.

As set forth in more detail in the Government's opening brief, disclosure of details regarding the interrogations of specific detainees would provide persons hostile to the United States with information concerning the circumstances in which certain interrogation techniques are used, permitting them to discern patterns of interrogation and draw conclusions regarding the interrogation techniques to be used by the United States Government.  See Defendants' Memorandum in Support of Motion for Summary Judgment ("Defs. Mem.") at 10-18 [D.E. 21]; Second Hilton Decl. ¶¶ 48-64, 70-72.  By analyzing such information here and in other cases, hostile parties could reconstruct—with exacting detail— interrogation methods in all cases and thus make highly informed predictions about the United States Government's interrogation approach as to individuals in the future.  See Second Hilton Decl. ¶¶ 49, 62-64; CIA v. Sims, 471 U.S. 159, 178 (1985) (cautioning that "bits and pieces of data" "may aid in piecing together bits of other information even when the individual piece is not of obvious importance in itself") (quotation omitted).  Such disclosures would improve the ability of hostile individuals to counter the United States government's methods and devise countermeasures to circumvent future interrogations.  See Hilton Decl. ¶¶ 49, 62-64.

A.       **The information redacted by the CIA has not been officially disclosed.**

Plaintiffs contend that Exemptions 1and 3 do not apply based on their speculative belief that the information at issue has been publicly disclosed.  Plfs. Opp. at 8-17.  In support, Plaintiffs cite to the declassified Department of Justice Office of Legal Counsel (OLC) memoranda as well as the declassified CIA Inspector General's Report ("IG Report") released on August 24, 2009.  See Plfs. Opp. at 8-17.   Much of the information Plaintiffs highlight from the OLC Memoranda relate to descriptions of specific interrogation techniques as they might generally be applied, not as they might have been applied to the specific detainees at issue in this case.  See Plfs. Opp. at 8-12.  Plaintiffs' argument misapprehends the harm that reasonably could be expected to result if specific details about the use of individual interrogation techniques, including details about the interrogations of specific individual detainees, were disclosed.

Although government agencies have officially released *general* information concerning interrogations, see Plfs. Opp. at 8-12, disclosure of the particular techniques used with particular detainees would provide a far more detailed picture of the CIA's interrogation process.  See Second Hilton Decl. ¶¶ 49, 62-64.  The courts have recognized the harm to counterterrorism and law enforcement efforts that would likely result from disclosure of the application of particular techniques in particular circumstances.  Cf. Blanton v. U.S. Dep't of Justice, 63 F. Supp. 2d 35, 49-50 (D.D.C. 1999) (proper to withhold under Exemption 2 the manner and circumstances in which particular law enforcement technique is employed even where technique itself has been disclosed); Wickline v. FBI, No. 92-1189 (SSH), 1994 WL 549756, at *5 (D.D.C. Sept. 30, 1994) (even commonly known procedures are protected from disclosure when "circumstances of their usefulness . . . may not be widely known" (internal quotation marks omitted)).

3

Second, and more to the point, the fact that information may have been publicly disclosed alone is insufficient: an agency's refusal to release classified information "is generally unaffected by whether the information has entered the realm of public knowledge." Halpern v. FBI, 181F.3d 279, 294 (2d Cir. 1999).  There is only a "limited exception" to this rule, "where the government has officially disclosed the specific information the requester seeks." Id.; accord Hudson River Sloop Clearwater, Inc. v. Dep't of the Navy, 891 F.2d 414, 421 (2d Cir. 1989). But this waiver of secrecy by official disclosure is narrowly defined, as the courts have "unequivocally recognized that the fact that information resides in the public domain does not eliminate the possibility that *further disclosures can cause harm* to intelligence sources, methods and operations." Fitzgibbon v. CIA, 911 F.2d 755, 766 (D.C. Cir. 1990), (emphasis added); accord Wolf v. CIA, 473 F.3d 370, 378 (D.C. Cir. 2007) ("the fact that information exists in some form in the public domain does not necessarily mean that official disclosure will not cause harm").  Because of the possibility of additional harm that could result from an official acknowledgment of previously disclosed information, the courts are "bar[red] . . . from prying loose from the government even the smallest bit of information that is properly classified." Afshar v. Department of State, 702 F.2d 1125, 1130 (D.C. Cir. 1983), accord Public Citizen v. Dep't of State, 11 F.3d 198, 201 (D.C. Cir. 2003).

Official disclosures of the mere use of certain interrogations techniques does not undermine the ability to classify specific aspects of the Detention Program.  Limited declassification of certain information concerning a classified program--in this instance, the program's existence, as well as some interrogation techniques that may or may not have been used on the detainees at issue--does not require full disclosure of the other, still-classified aspects

4

of that program.  See, e.g., Ctr. for Nat'l Security Studies v. U.S. Dep't of Justice, 331 F.3d 918,

930-31 (D.C. Cir. 2003) ("The disclosure of a few pieces of information in no way lessens the

government's argument that complete disclosure would provide a composite picture of its

investigation and have negative effects on its investigation."); Salisbury v. United States, 690

F.2d 966, 971 (D.C. Cir. 1982) ("The fact of disclosure of a similar type of information in a

different case does not mean that the agency must make its disclosure in every case."); Military

Audit Project v. Casey, 656 F.2d 724, 752-53 (D.C. Cir. 1981) (rejecting the suggestion that

"because the government has revealed some documents it previously considered too sensitive to

release, it now must reveal all").  Numerous other facts about the program, and the CIA's

intelligence operations in general, remain highly classified despite the government's limited

declassification of the program's existence and general discussions of interrogation techniques.

Forcing the disclosure of such facts based on the limited official disclosure of the CIA terrorist

detention and interrogation program would, as Ms. Hilton explains, cause irreparable harm to the

national security by compromising sensitive intelligence sources and methods.  See Second

Hilton Decl. ¶¶ 50-64, 70-72.

"Official disclosure" does not mean public discussion of the information by unofficial

commentators.  To the contrary, a finding that classified information has been "officially

disclosed" requires that: (1) the information at issue must be as specific as the information that

has been publicly disclosed; (2) the disputed information must exactly match the information

publicly disclosed, e.g., it must involve the same time period or same operation; and (3) the

information sought to be released must already have been publicly released through "an official

and documented disclosure."  Fitzgibbon v. CIA, 911 F.2d 755, 765 (D.C. Cir. 1990) (citing

5

Afshar v. Dep't of State, 702 F.2d 1125, 1133 (D.C. Cir. 1983)); accord Afshar, 702 F.2d at 1133

(plaintiffs bear burden of showing specific public information that duplicates information

withheld).  This test is applied with "exactitude" out of deference to " 'the Government's vital

interest in information relating to national security and foreign affairs.'" Wolf, 473 F.3d at 378

(quoting Public Citizen, 11 F.3d at 203 (test presents a "high hurdle" due to government interest

in national security)).  In fact, the test is applied with such exactitude that nearly every decision

on this subject denies a waiver based on official disclosure.  Plaintiffs have not alleged, let alone

met their burden to demonstrate, that the information regarding intelligence activities and

methods and foreign relations and foreign activities of the United States has been officially

disclosed under this rigorous standard.

        In their Opposition, along with the examples of general information released through the

OLC Memoranda discussed above, Plaintiffs also cite to examples from the fourth OLC

Memorandum, as well as the IG Report, for examples where the CIA has released specific

information regarding the interrogations of the detainees at issue in this litigation, which they

argue invalidate CIA's Exemption 1 and 3 claims.  See Plfs. Opp. at 12-17.  Defendants agree

with Plaintiffs that if the information released by the OLC memoranda or the IG Report was the

same information that is contained in the documents involved in this litigation, it should be

released.  However, the CIA reprocessed the documents requested by Plaintiffs in light of the

release of OLC Memoranda, Second Hilton Decl. ¶¶ 22-24, 70-71,  and CIA was aware of the

August 24, 2009 release of information prior to filing the Second Hilton Declaration in support

of Defendants motion for summary judgment.  Hilton Decl. ¶ 70.  The information that remains

redacted in the documents requested by Plaintiffs simply does not match the information that has

been officially disclosed.  It is neither as specific as the information that has been officially disclosed nor does the disputed information exactly match the information officially disclosed. See Fitzgibbon v. CIA, 911 F.2d 755, 765 (D.C. Cir. 1990).

Similarly, the reports by the ICRC do not undermine the ability to properly classify the statements of the detainees.  See Plfs. Opp. at 17-18.  The statements in this report, even if made by individuals who allege first-hand knowledge, cannot work to declassify information that Ms. Hilton affirms is properly classified.  See, e.g., Terkel v. AT & T Corp., 441 F. Supp. 2d 899, 913-14 (N.D. Ill. 2006) (rejecting contention that media reports about NSA surveillance program render state secrets privilege inapplicable); see also El-Masri v. United States, 479 F.3d 296, 311 n.5 (4th Cir. 2007) (declining to endorse plaintiff's theory that information is ineligible for protection under the state secrets privilege simply because it has been published in the news media).  Classified information is not considered to be "in the public domain *unless there had been official disclosure of it.*"  Knopf v. Colby, 509 F.2d 1362, 1370 (4th Cir. 1975) (emphasis added).  Thus, the test for waiver by official disclosure is a "stringen[t]" one, Public Citizen, 11 F.3d at 202, and one that has not been met by Plaintiffs.

Finally, Plaintiffs argue that disclosures made by President Obama forever invalidates claims that related but different information can be properly classified.  However, Section 3.1(b) of Executive Order 12,958 allows for declassification of information when:

> the need to protect such information may be outweighed by the public interest in disclosure of the information, and in these cases the information should be declassified. When such questions arise, they shall be referred to the agency head or the senior agency official. That official will determine, as an exercise of discretion, whether the public interest in disclosure outweighs the damage to the national security that might reasonably be expected from disclosure.

E.O. 12,958, as amended, § 3.1(b).  Regarding the release of information and statements made by

by President Obama, it is clear that the information regarding interrogations was released after a

determination was made that the public interest in disclosure of the information outweighed the

need to protect the information, despite any potential harm from release.  See Plfs. Opp. at 23-24.

In addition, as discussed above, the information President Obama has discussed and approved for

official disclosure is of a general nature and is not the same classified information that was

redacted from the documents in this case.  A determination that certain information should be

made public, does not require disclosure of similar information that remains properly classified.

See e.g. Sims, 471 U.S. at 180-81 (rejecting the argument that the CIA was "somehow estopped"

from withholding the identities of some intelligence sources because it had already disclosed

others).

        Plaintiffs' also claim that defendants cannot demonstrate release of this information

would damage national security.  However, in the context of the Exemption 1 claims, plaintiffs'

unsupported allegations are refuted by the Second Hilton Declaration.  See Second Hilton Decl.

at ¶ 44, 53-72.  In addition, and more significantly, the documents at issue are also redacted

under Exemption 3, which, pursuant to the National Security Act of 1947, see 50 U.S.C. § 403-

1(i)(1) and Section 6 of the Central Intelligence Agency Act of 1949, see 50 U.S.C. § 403g, do

not require an articulation of damage to national security.  See Defs. Mem. at 24-27.   The CIA

need only demonstrate that, under National Security Act of 1947, the information "relates to

intelligence sources and methods,"  Fitzgibbon, 911 F.2d at 762, and that, under Central

Intelligence Agency Act of 1949, the information relates to the publication or disclosure of the

organization or functions of the Agency.  50 U.S.C. § 403g; see also  Goland v. CIA, 607 F.2d

339, 350-51 (D.C. Cir. 1979); <u>Sims</u>, 471 U.S. at 167.

> **B.   The details concerning the detainees' capture, detention and interrogation were properly withheld under Exemption 1 and 3 as those details are classified and fall within the core functions of the CIA.**

Without any citation to case law, plaintiffs argue that the United States Government lacks the authority to classify "information derived from detainees observations and personal experiences." Plfs. Opp. at 20.  Plaintiffs illogically argue that by using proper FOIA exemptions, defendants have transformed the FOIA into a detention statute.  Plfs. Opp. at 20.  Defendants are not detaining the High Value Detainees ("HVDs") that are the subject of plaintiffs' request because they have been exposed to classified interrogation techniques.  Further, the CIA is not putting a "permanent gag on the individual's communication with the world."  Plfs. Opp. at 21.  Rather, the CIA has redacted information that would expose interrogation methods used by the CIA, and also expose the information that was gained through use of those methods as well as information regarding the capture, detention and confinement of these prisoners and foreign relations information.  Second Hilton Decl. ¶ 49.  If released, this information would damage national security and compromise the CIA's ability to perform its necessary core functions.  The courts have routinely held that the government can withhold such information.  <u>See</u>, <u>e.g.</u>, <u>Wolf v. CIA</u>, 357 F. Supp. 2d 112, 116 (D.D.C. 2004), aff'd in part, rev'd in part on other grounds, 473 F.3d 370 (D.C. Cir. 2007) (classification warranted where "disclosure could reveal general CIA methods of information gathering"); <u>Hogan v. Huff</u>, 00 Civ. 6753 (VM), 2002 WL 1359722, at *8 (S.D.N.Y. June 21, 2002) (information properly withheld under Exemption 1 where disclosure of the information "would potentially harm the agency by exposing its methods").

As the Supreme Court held in <u>Sims</u>, the CIA's discretion in determining what would

constitute an unauthorized disclosure of intelligence sources and methods is "very broad." 471

U.S. at 169-70. The Court made clear that the judiciary must defer to the CIA's judgments with

respect to disclosures that affect intelligence sources and methods:

> [I]t is the responsibility of the Director of Central Intelligence, not that of the
> judiciary, to weigh the variety of complex and subtle factors in determining
> whether disclosure of information may lead to an unacceptable risk of
> compromising the Agency's intelligence-gathering process.

Id. at 180; see also Hunt v. CIA, 981 F.2d 1116, 1120 (9th Cir. 1992) (describing CIA's

discretion to withhold information under Exemption 3 as "a near-blanket FOIA exemption");

Arabian Shield Dev. Co. v. CIA, No. 3-98-CV-0624-BD, 1999 WL 118796, at *4 (N.D. Tex.

Feb. 26, 1999) (the CIA's determination of what would "lead to the unauthorized disclosure of

intelligence sources and methods" is "almost unassailable"). Such broad discretion is justified

because even "superficially innocuous information" might reveal valuable intelligence sources

and methods. Sims, 471 U.S. at 178.

> **C.   The CIA did not classify information to "conceal violations of law" or
> "prevent embarrassment."**

Plaintiffs' argument that CIA's Exemption 1 and 3 claims are invalid because the CIA

classified the redacted information to "conceal violations of law" or "prevent embarrassment" in

violation of Executive Order No. 12,958, § 1.7(a)(1)-(2) is incorrect. See Plfs. Opp. at 25-26.

Section 1.7(a) of the Executive Order bars the Government from classifying otherwise

unclassified information "in order to"— i.e., for the purpose of—concealing violations of law.

68 Fed. Reg. at 15318. To implicate Section 1.7(a), there must be evidence of improper motive

or intent on the part of the classifying authority. Billington v. DOJ, 11 F. Supp. 2d 45, 58

(D.D.C. 1998) (rejecting argument that FBI violated Executive Order provisions barring

classification in order to conceal violations of law or prevent embarrassment where plaintiff did "not provide any proof of the FBI's motives in classifying the information" and there was no evidence "that the FBI was involved in an attempt to cover-up information"), aff'd in part, vacated in part, 233 F.3d 581 (D.C. Cir. 2000); Canning v. U.S. Dep't of Justice, 848 F. Supp 1037, 1047 (D.D.C. 1994) (rejecting argument that information was classified in order to prevent embarrassment or conceal illegal activities because "the Court finds no credible evidence that the agency's motives for its withholding decisions were improper or otherwise in violation of [prior version of] E.O. 12356"); United States v. Abu Marzook, 412 F. Supp. 2d 913, 923 (N.D. Ill. 2006) (rejecting argument that information had been improperly classified to prevent embarrassment and to conceal Israel's use of illegal interrogation methods because, inter alia, "there is simply no evidence that these materials [were] classified merely to prevent embarrassment to Israel"); Arabian Shield, 1999 WL 118796, at *4 (rejecting argument that information was improperly classified where plaintiff had "no[t] offered evidence that the CIA classified the requested information for the purpose of concealing a crime").

Ms. Hilton swore in her declaration that the CIA had no improper motive in classifying the information at issue:

> With respect to the information relating to CIA intelligence activities, sources, and methods, and foreign relations and foreign activities, described in section V.A.2. of this declaration for which FOIA Exemption (b)(1) is asserted in this case, I have determined that this information has not been classified in order to conceal violations of law, inefficiency, or administrative error; prevent embarrassment to a person, organization or agency; restrain competition; or prevent or delay the release of information that does not require protection in the interests of national security.

Second Hilton Decl. ¶ 45.  Plaintiffs have offered no evidence that the CIA's motives for

classifying the information at issue in this case were improper.  Plaintiffs' argument hinges on speculation that the redacted information reveals illegal and embarrassing information and that the information was classified specifically for the purpose of suppressing such information so as to not provide our enemies with propaganda which could be used to support their cause.  Plfs. Opp. at 25-26.   Ms. Hilton's representations to the contrary are unassailable, thus, there is no evidence that the CIA had an improper motive in classifying portions of the documents requested by Plaintiffs' FOIA request.  See Wilson v. Dep't of Justice,  Civ.A. No. 87-2415-LFO, 1991 WL 111457, at *2 (D.D.C. June 13, 1991) ("even if some of the information withheld were embarrassing to Egyptian officials, it would nonetheless be covered by Exemption 1 if, independent of any desire to avoid embarrassment, the information withheld were properly classified").

## II.    In Camera Review Is Neither Appropriate Nor Necessary

As explained in Defs. Mem., summary judgment for defendants is appropriate on the basis of the CIA's detailed submissions to date, and plaintiffs' arguments to the contrary are meritless.  Plaintiffs' request that the Court conduct an in camera review of the documents at issue runs contrary to judicial efficiency and the law of this Circuit, and should be rejected.

In camera review of documents withheld in response to a FOIA request is a matter of last resort.  See Robbins Tire & Rubber Co., 437 U.S. at 224 (explaining that FOIA's in camera review provision is "designed to be invoked when the issue before the District Court could not be otherwise resolved").  Whether to conduct in camera review is left to "the broad discretion of the trial judge." Center for Auto Safety v. EPA, 731 F.2d 16, 20 (D.C. Cir. 1984). "The ultimate criterion is . . . [w]hether the district judge believes that in camera inspection is needed in order

to make a responsible de novo determination on the claims of exemption." Id. (quoting Ray v.

Turner, 587 F.2d 1187, 1195 (D.C. Cir. 1978)).  But where, as here, an agency has met its burden

with a sufficiently detailed submission, "in camera review is neither necessary nor appropriate."

Hayden v. National Sec. Agency, 608 F.2d 1381, 1387 (D.C. Cir. 1979), cert. denied, 446 U.S.

937 (1980).  Indeed, in camera review should not be "resorted to as a matter of course, simply on

the theory that 'it can't hurt'."  Quiñon v. Federal Bureau of Investigation, 86 F.3d 1222, 1228

(D.C. Cir. 1996)(cit. omitted); see also Hayden, 608 F.2d 1381, 1387 (reliance on agency

submissions in lieu of in camera review "is in accordance with congressional intent that courts

give agency affidavits 'substantial weight,' in recognition of the agency's expertise.  In this

scheme, in camera review is a "last resort" . . .); Local 3, Int'l Bhd. of Elec. Workers v. NLRB,

845 F.2d 1177, 1180 (2d Cir. 1988) ("[i]n camera review is considered the exception, not the

rule").

        In camera review is inappropriate in this case because the uncontested information in the

CIA's declaration establishes that the CIA properly applied FOIA exemptions 1 and 3 to the

documents at issue.  See Doherty v. DOJ, 775 F.2d 49, 52 (2d Cir. 1985) ("where the

Government affidavits on their face indicate that the documents withheld logically fall within the

claimed exemptions and there is no doubt as to agency good faith, the court should restrain its

discretion to order in camera review"); Lead Indus. Ass'n, Inc. v. Occupational Safety and Health

Admin., 610 F.2d 70, 88 (2d Cir. 1979) ("it is only where the record is vague or the agency

claims too sweeping or suggestive of bad faith that a District Court should conduct an [i]n

camera examination to look for segregable non-exempt matter;" "where it is clear from the

record that an agency has not exempted whole documents merely because they contained some

exempt material, it is unnecessary and often unwise for a court to undertake such an examination").

Moreover, in camera review is particularly inappropriate because the documents at issue contain classified information that falls within the strict access provisions of a special access program as established in Executive Order 12958, as amended.  Second Hilton Decl. ¶¶ 57-58. Plaintiffs have provided no evidence contradicting the sworn testimony of the CIA declarant, which is entitled to a presumption of good faith.  See Safecard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir.1991) (affidavits submitted by an agency are "accorded a presumption of good faith"); Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994).

Even if Plaintiffs could overcome — and they cannot — the unrebutted presumption of good faith afforded an agency declaration, the Court should not order in camera review of the highly classified and privileged documents before offering the CIA the opportunity to submit a classified declaration containing justifications for withholding that cannot be stated on the public record.  See Earth Pledge Foundation v. CIA, 988 F. Supp. 623, 626 (S.D.N.Y. 1996) (requiring production of in camera declaration "demonstrating that the CIA's justifications for nondisclosure satisfied FOIA's statutory exemptions" where the court determined that it needed more information than the CIA was able to provide in a public declaration); see also, e.g., Campbell v. DOJ, 164 F.3d 20, 31 (D.C. Cir. 1998) ("On remand, the district court can either review the documents in camera or require the FBI to provide a new declaration. . . . The latter course is favored where agency affidavits are facially inadequate[.]") (citation omitted); The Nation Magazine v. Customs Serv., 71 F.3d 885, 892, 895 (D.C. Cir. 1995) (remanding for Customs to provide additional information and affidavits).

Plaintiffs furthermore cannot justify in camera review pursuant to the six factors set forth

by the D.C. Circuit in Allen v. CIA: "(a) judicial economy, (b) the conclusory nature of the

agency affidavits, (c) bad faith on the part of the agency, (d) disputes concerning the contents of

the documents, (e) whether the agency requests an in camera inspection, and (f) the strong public

interest in disclosure." See Donovan v. FBI, 806 F.2d 55, 59 (2d Cir. 1986), citing Allen v. CIA,

636 F.2d 1287, 1291 (D.C. Cir. 1980) (overruled on other grounds in Founding Church of

Scientology v. Smith, 721 F.2d 828 (D.C. Cir. 1983)).

As to the first factor, judicial economy would not be served by in camera review in this

case where the CIA has provided descriptions regarding the type of classified information

contained within each document and has provided in depth explanations about why release of

that information would harm national security; all of which provides sufficient detail for the

Court to conduct the required level of review.

As to the second factor, as discussed above, the CIA's submission is not "conclusory".

While the CIA is restricted in the amount of information it can provide on the public record, the

affidavit provides  "reasonable specificity" and is therefore sufficient to support summary

judgment without the need for in camera review.  See Krikorian v. United States Dep't of State,

984 F.2d 461, 464-65 (D.C. Cir. 1993).

Plaintiffs' primary argument as to the need for in camera review involves the third factor

- - allegations of bad faith.  To support these allegations, Plaintiffs argue that some of the

previously redacted information that was released on July 15, 2009, after CIA reprocessed the

documents, demonstrates defendants acted in bad faith when redacting the information the first

time these documents were released.  Plfs. Opp. at 26-28.  Plaintiffs claim some of the newly

15

released materials does not involve interrogation methods, conditions of confinement and that their publication cannot harm national security.  Id.  However, the information that was released by defendants after the documents were reprocessed was properly redacted the first time as demonstrated by the June 27, 2008 Declaration of Wendy Hilton ("First Hilton Decl."), attached as Exhibit A to defendants' first Memorandum in Support of Defendants Motion for Summary Judgment [D.E. 9].

For example, plaintiffs cite to a newly unredacted passages where Abu Zubaydah and Al Nashiri describe injuries they allege to have sustained while in custody as well as Abu Zubaydah's description of how his alleged injuries were treated.  The information contained in Abu Zubaydah's and Al Nashiri's statements were originally redacted on the bases that they contained description of their conditions of confinement and interrogation methods they claim to have experienced.  First Hilton Decl. ¶ 23-24.  What injuries Zubaydah or Al Nashiri allege to have suffered are directly related to what interrogation methods might have been used.  In addition, Zubaydah's description of his treatment while in CIA custody are connected to his conditions of confinement.  Furthermore, defendants redacted information on the basis that false or exaggerated claims by these High Value Detainees must be treated as classified information.  First Hilton Decl. ¶¶ 64-66.  Defendants explained that "[t]o do otherwise would have the effect of allowing accurate, highly classified information about the Program to be revealed by the HVDs."  First Hilton Decl. ¶ 65.

Plaintiffs also cite as evidence of bad faith that defendants had previously redacted the statement by Majid Kahn that he had never seen or spoken to his daughter, who was born after his capture.  Plfs. Opp. at n. 11.  However, as described in the First Hilton Declaration, this

16

information was properly redacted as relating to Kahn's capture and detention as it provided a time frame for his arrest and how long he had been detained.  First Hilton Decl. ¶ 26.  All the statements plaintiffs cite as evidence of bad faith were addressed and described in the First Hilton Declaration and properly redacted as classified information.  The fact that new information has been made publicly available leading to a determination by the CIA to release additional portions of previously redacted documents does not support allegations of bad faith sufficient to justify <u>in camera</u> review.

Plaintiffs have furthermore made no claim and presented no evidence that would give rise to a credible dispute over the contents of the documents, and the agency does not request <u>in camera</u> review because summary judgment is appropriate on the basis of the Hilton Declaration.  Finally, there is not a strong public interest in disclosure of the redacted information.  To the contrary, there is a strong public interest in withholding this information.  As explained in the Hilton Declaration, release of the type of information redacted by the CIA would hamper its efforts in protecting the American people from future terrorist attacks as well as gaining the cooperation of foreign nations in the war on terror.   <u>See</u> Second Hilton Decl. ¶¶ 49, 62-64.

For all of these reasons, <u>in camera</u> review is "neither necessary nor appropriate" in this case.  <u>See</u> <u>Hayden</u>, 608 F.2d at 1387.

**III.    Plaintiffs Have No First Amendment Right to Hear Classified Information**

Finally, plaintiffs erroneously argue that redaction of intelligence activities and foreign relations information violates plaintiffs' First Amendment right to hear and receive speech.  <u>See</u> Plfs. Opp. at 29-31.  Plaintiffs, in support of this proposition, rely on inapplicable precedent regarding the right to receive speech in contexts that have no bearing on this case, *e.g.* licensing

of radio stations, censorship of obscene materials, right to engage in and hear speech critical of the government.  See Plfs. Opp. at 31-32, citing, Red Lion Broad. Co. v. F.C.C., 395 U.S. 367 (1969); Stanley v. Georgia, 394 U.S. 557 (1969); Buckley v. Am. Constitutional Law Found., 525 U.S. 182 (1999).  Defendants do not disagree with any of the black letter law cited by plaintiffs.  However, plaintiffs have cited no case law to support the proposition that they are entitled to hear classified information.

Plaintiffs' argument, if accepted, would vitiate the FOIA, as well as Executive Order 12,958, as amended.  Any time a government agency redacted information pursuant to any FOIA exemption or classified information based on Executive Order 12,958, as amended, a plaintiff could argue that their First Amendment rights to hear or receive that redacted speech has been violated.  This is obviously an overstatement of the law.  "There is no inherent constitutional right of access to government information--whether classified or unclassified--as the existence of the Freedom of Information Act, and its host of exemptions, both amply demonstrate."  Pfeiffer v. C.I.A., WL 80869 at *4 (D.D.C. 1994), citing Houchins v. KQED, Inc., 438 U.S. 1, 15 (1978) (plurality opinion).  In fact, the First Amendment right to receive information, "only requires that the government not engage in conduct that impermissibly silences a willing speaker."  Martin v. E.P.A., 271 F.Supp.2d 38, 48 (D.D.C. 2002).  In the present case, the government properly classified highly sensitive information, the release of which could cause grave harm to national security.  As this information is not publically available, plaintiffs poses no First Amendment right to hear this information.  Bartel v. F.A.A., 617 F.Supp. 190, 195 (D.D.C. 1985).

Moreover, the courts have long recognized the government has a compelling interest in limiting dissemination of material that affects national security.  Indeed, nowhere does the

Government have a more compelling interest than protecting information that is vital to national security.  Haig v. Agee, 453 U.S. 280, 307 (1981) ("It is 'obvious and unarguable' that no governmental interest is more compelling than the security of the Nation." (cits. omitted)); Snepp v. U.S. 444 U.S. 507, 510 n.3 (1981) ("The Government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service."); United States v. Al-Arian, 267 F.Supp.2d 1258, 1266-67 (M.D.Fla. 2003) ("This Court cannot think of a more compelling or substantial interest that the United States possesses than protection of classified information.").  It is a long recognized principle that "certain forms of speech, precisely because of their content, are not entitled to First Amendment protection."  Bullfrog Films, Inc. v. Wick, 646 F.Supp. 492, 503 (C.D. Cal. 1986), citing, Roth v. United States, 354 U.S. 476 (1957) (obscenity) and Chaplinsky v. New Hampshire, 315 U.S. 568 (1942) ("fighting words").  In fact, in Haig v. Agee, the Supreme Court held, in response to Agee's contention that government action unconstitutionally limited his right to criticize the government, that Agee's statements "clearly were not protected by the Constitution" because the statements jeopardized national security.  Haig, 453 U.S. at 308-09.  Thus, defendants' utmost compelling interest in protecting information vital to national security greatly outweighs any right plaintiffs might have to hear the speech at issue.

In this case, defendants, through the Hilton Declaration, have described in great detail the compelling government interest in withholding the redacted information, and have further demonstrated that the CIA narrowly tailored its redactions only to information concerning intelligence activities and methods, and foreign relations and foreign activities of the United

States.  Thus, Plaintiffs' First Amendment arguments are without merit and cannot support denial of defendants' request for summary judgment.

## CONCLUSION

For the foregoing reasons, the Court should enter summary judgment for defendants.

Dated: October 2, 2009                 Respectfully Submitted,

                                       TONY WEST
                                       Assistant Attorney General

                                       JOHN R. TYLER
                                       Assistant Director


                                         /s/ James J. Schwartz
                                       JAMES J. SCHWARTZ (D.C. Bar No. 468625)
                                       Senior Counsel
                                       United States Department of Justice
                                       Civil Division, Federal Programs Branch
                                       20 Massachusetts Avenue N.W.  Room 7140
                                       Washington, D.C.  20530
                                       Tel.: (202) 616-8267
                                       Fax: (202) 616-8202
                                       Email: james.schwartz@usdoj.gov
                                       Counsel for Defendants