**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| AMERICAN CIVIL LIBERTIES UNION, ) | |
| ) | |
| AMERICAN CIVIL LIBERTIES UNION ) | |
| FOUNDATION, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 08-437 (RCL) |
| ) | |
| DEPARTMENT OF DEFENSE, ) | |
| ) | |
| CENTRAL INTELLIGENCE AGENCY, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**MEMORANDUM OPINION**

**I.    INTRODUCTION**

Before the Court is defendants' Motion [21] for Summary Judgment.  Previously, this

Court granted defendants' Motion [9] for Summary Judgment on October 29, 2008.  Plaintiffs

appealed on December 10, 2008.  Upon defendants' request, the Court of Appeals remanded the

case to this Court on May 19, 2009 so that defendants could reevaluate plaintiffs' Freedom of

Information Act ("FOIA") requests in light of three executive orders issued by President Obama

on January 22, 2009, and the declassification and public release of portions of four legal opinions

of the Office of Legal Counsel ("OLC") on April 16, 2009.

On remand, defendants reprocessed plaintiffs' FOIA request and provided plaintiffs the

requested documents, invoking FOIA exemptions 1 and 3 to justify certain redactions.

Defendants then moved for summary judgment on August, 28, 2009.  Plaintiffs oppose the

motion and argue that FOIA exemptions 1 and 3 do not justify defendants' redactions.  The Court

concludes that defendants properly invoked exemptions 1 and 3 to redact certain information

from the documents and will grant defendants' Motion [21] for Summary Judgment.

## II.    BACKGROUND

This Court's October 29, 2008, Memorandum Opinion [13] contains the facts in this case

prior to appeal.  *See ACLU v. Dep't of Defense*, 584 F. Supp. 2d 19, 22 (D.D.C. 2008).

Accordingly, the Court will only discuss the developments subsequent to that Memorandum.

On December 10, 2008, plaintiffs appealed this Court's October 29, 2008 Order granting

summary judgment for defendants.  (Notice of Appeal [15].)  Before the parties filed their briefs

in the Court of Appeals, defendants decided to reevaluate their redactions in light of several

events.  (Hilton Decl ¶ 22.)  First, on January 22, 2009, President Obama issued the following

executive orders:

- •     Executive Order No. 13491, which limited interrogation techniques used by the

    government to only those authorized by the Army Field Manual and ordered the

    CIA to close any detention centers it operated,  Exec. Order No. 13491, 74 Fed.

    Reg. 4893 (Jan. 27, 2009);

- •     Executive Order No. 13492, which ordered the Department of Defense to close

    the detention facility at Guantanamo Bay within one year and mandated that a

    "review of the status of each individual currently detained at Guantanamo shall

    commence immediately" to determine whether detainees should be transferred,

    prosecuted, or receive some other disposition, Exec. Order No. 13492, 74 Fed.

    Reg. 4897 (Jan. 27, 2009); and

- Executive Order No. 13493, which established a Special Task Force to review the lawful options available to the government with respect to the apprehension, detention, and disposition of suspected terrorists.  Exec. Order No. 13493, 74 Fed. Reg. 4901 (Jan. 27, 2009).

To comply with these Executive Orders, the CIA stopped using enhanced interrogation techniques ("EITs") and closed its detention facilities.  (Hilton Decl. ¶ 22.)

Second, on April 16, 2009, President Obama declassified and released to the public four legal opinions issued by the OLC that discussed the legality of EITs.  (*Id.* ¶ 23.)  The release did not declassify all information relating to the legality of EITs; rather it constituted only "a limited declassification of information relating to the legality of EITs."  (*Id.*)  Last, on August 24, 2009, the government released a declassified version of the CIA's Inspector General's Report ("IG Report") that details interrogation techniques and conditions of confinement.  (*Id.* ¶ 56; Pls.' Opp'n Ex. F.)

In addition to the above government disclosures, on April 30, 2009, the New York Review of Books published a forty page report of the International Committee of the Red Cross ("ICRC") that contained accounts of the treatment of the high value detainees in CIA custody.  (Pls.' Opp'n Ex. E.)

On May 19, 2009, the Court of Appeals remanded the case to this Court upon defendants' request.  (Hilton Decl. ¶ 24.)  The CIA then reprocessed plaintiffs' FOIA request, which sought unredacted versions of Combatant Status Review Tribunal ("CSRT") hearing transcripts and copies of all records provided to the CSRT by the detainees or their Personal Representative, in light of the government's recent disclosures.  (*Id.*)  As a result, the CIA released one transcript in

its entirety, except for names and signatures of Department of Defense personnel, and provided

redacted versions of the five remaining transcripts and three detainee statements.  (*Id.* ¶¶ 24, 27-

34.)  To justify the redactions, defendants invoked FOIA Exemptions 1 and 3.  (*Id.*)

III.   **LEGAL FRAMEWORK**

A.     **FOIA Exemptions 1 and 3**

The Freedom of Information Act requires federal agencies to disclose agency records

upon request.  5 U.S.C. § 552(a).  Disclosure of agency records, however, "is not always in the

public interest."  *CIA v. Sims*, 471 U.S. 159, 167 (1985).  As a result, Congress enacted nine

exemptions that agencies may invoke to withhold documents.  *See* 5 U.S.C. § 552(b).  Agencies,

however, cannot simply withhold the entire document; rather they must provide a "reasonably

segregable portion of [the] record . . . after deletion of the portions which are exempt under this

subsection."  5 U.S.C. § 552(b).  District courts review agency decisions to withhold classified

information *de novo*, and the agency bears the burden of proving its claim for exemption.  *Id.* §

552(a)(4)(B).

At issue here are FOIA Exemptions 1 and 3.  Exemption 1 allows agencies to withhold

records that are authorized to be kept secret by an Executive Order and that are properly

classified pursuant to that Executive Order.  5 U.S.C. § 552(b)(1).  In invoking Exemption 1,

defendants rely upon Executive Order No. 12,958, Fed. Reg. 19,825 (Apr. 17, 1995),[1] which

provides a detailed system for classifying documents that the government determines should be

kept secret.  Pursuant to this Executive Order, agencies may classify information concerning

---

[1] Executive Order No. 12,958 was amended by Executive Order No. 13,292, 68 Fed. Reg. 15,315 (Mar. 28, 2003).  All citations to Executive Order No. 12,958 are to the Order as amended by Executive Order No. 13,292.

"intelligence sources or methods." *Id.* § 1.4(c).  An agency may only classify such information,

however, if the agency determines that public release of the information would damage the

national security of the United States.  *Id.* § 1.1(a)(4).

Exemption 3 applies where an agency establishes that the withheld information is

"specifically exempt from disclosure by statute." 5 U.S.C. § 552(b)(3).  In invoking Exemption 3,

defendants rely upon the National Security Act of 1947 and the Central Intelligence Agency Act

of 1949.  Like Executive Order No. 12,958, the National Security Act of 1947 and Central

Intelligence Agency Act allow the withholding of "intelligence sources and methods."  50 U.S.C.

§ 403-1(i)(1); 50 U.S.C. § 403g; (*see also* Hilton Decl. ¶¶ 27-34).

Neither exemption will apply if the government already officially disclosed the requested

information.  Plaintiffs bear the burden of proving official disclosure of the specific information

requested.  *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983).

**B.      Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted

when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that

there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law."  In a FOIA case, a court may grant summary judgment on the basis of agency

declarations, provided that the declarations are reasonably specific and submitted in good faith.

*See Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980).  Courts give substantial weight to such

agency declarations in cases concerning national security.  *Id.*   Indeed, courts have "consistently

deferred to executive affidavits predicting harm to the national security, and have found it unwise

to undertake searching judicial review."  *Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d

918, 927 (D.C. Cir. 2003). If, however, a court is not satisfied with the agency's affidavit, the

court may, within its discretion, conduct an *in camera* review of the withheld documents. *See*

*Horowitz v. Peace Corps*, 428 F.3d 271, 282 (D.C. Cir. 2005).

## IV.   ANALYSIS

Affording substantial weight to defendants' declaration, the Court concludes that

defendants properly invoked Exemptions 1 and 3 to withhold information that is responsive to

plaintiffs' FOIA request. Moreover, *in camera* review is neither necessary nor appropriate, and

plaintiffs' First Amendment argument is without merit. Accordingly, the Court will grant

defendants' motion for summary judgment.

## A.   Defendants Properly Invoked Exemptions 1 and 3 to Withhold Information

Plaintiffs argue that defendants cannot withhold the requested records under Exemptions

1 and 3 because the records, which pertain to interrogation techniques and conditions of

confinement, are not "intelligence sources and methods." Plaintiffs further argue that Exemption

1 does not apply because disclosure of the detainees' accounts of interrogation and imprisonment

would not damage national security. The Court is not persuaded by these arguments and

concludes that defendants properly invoked Exemptions 1 and 3.

### 1.   The Records Are "Intelligence Sources and Methods"

Plaintiffs contend that the records are not "intelligence sources and methods" for three

reasons: (1) the withheld information has been declassified and is widely available; (2) the

President banned the use of EITs and closed the CIA's detention facilities; and (3) the

government lacks authority to classify information within the detainees' personal knowledge.

(Pls.' Opp'n at 7.) The Court disagrees.

First, the Court finds that plaintiffs have not satisfied their burden of proving that the

government officially disclosed the specific information withheld.  *See Afshar*, 702 F.2d at 1130.

Plaintiffs assert that the government's release of the declassified OLC memoranda and the IG

Report demonstrates that the information they seek is in the public domain.  These documents

contain general information regarding defendants' interrogation program.  (*See* Pls.' Opp'n Ex.

A-D, F-G.)  The redacted information at issue in this case, however, is specific and particular to

each detainee and would reveal far more about the CIA's interrogation process than the

previously released records.  (*See* Hilton Decl. ¶¶ 49, 60, 62-64.)  Indeed, the fact that the

government disclosed general information on its interrogation program does not require full

disclosure of aspects of the program that remain classified.  *See Fitzgibbon v. CIA*, 911 F.2d 755,

766 (D.C. Cir. 1990) (recognizing that the fact that some information is publicly available "does

not eliminate the possibility that further disclosures can cause harm to intelligence sources,

methods, and operations").

Moreover, as stated in Ms. Hilton's declaration, the redacted information relates not just

to the use of EITs, but also to the interrogation methods and procedures that are authorized in the

Army Field Manual and are in use today.  (Hilton Decl. ¶ 60.)  Release of such information

would seriously damage national security by compromising intelligence sources and methods

(*see id.* ¶¶ 50-64, 70-72), even if the damage is not apparent to the casual observer.  *See*

*Halperin*, 629 F.2d at 150 ("[E]ach individual piece of intelligence information, much like a

piece of jigsaw puzzle, may aid in piecing together other bits of information even when the

individual piece is not of obvious importance in itself.").

Furthermore, defendants agree with plaintiffs that, if the information released in the OLC

memoranda and the IG Report were the same as the information contained in the documents in

this litigation, it should be released.  (Defs.' Reply at 6.)   For that reason, defendants reprocessed

plaintiffs' FOIA request.  (*See id.* ¶¶ 22-24, 70-71.)   During this review, however, defendants

determined that some of the information in the documents remained classified.  (*See id.* ¶¶ 24,

27-34.)  As a result, defendants provided plaintiffs with documents that contained revised

redactions.  (*Id.*)  Because defendants reprocessed plaintiffs' request and released new versions

of many of the requested documents, the Court can "see no reason to question [defendants'] good

faith in withholding the remaining [information] on national security grounds."  *Students Against*

*Genocide v. Dep't of State*, 257 F.3d 828, 835 (D.C. Cir. 2001).

The Court also finds that plaintiffs' reliance on the report authored by the International

Committee of the Red Cross is misplaced.  This report does not constitute an official disclosure

by the government.  Without official disclosure, classified information is not considered to be

public.  *Knopf v. Colby*, 509 F.2d 1362, 1370 (4th Cir. 1975).  Accordingly, the Court finds that

plaintiffs have not met their burden and that the government has not publicly disclosed the

specific information withheld.

Second, the Court does not see how the President's order prohibiting the use of EITs and

closing the CIA's prisons justifies full disclosure of the records sought.  Plaintiffs' theory would

require the government to fully disclose the details of every classified program that the

government discontinues.  This simply is not true.  A government record remains classified until

a government official determines that "the public interest in disclosure outweighs the damage to

the national security that might reasonably be expected from disclosure."  Exec. Order No.

12,958 § 3.1(b).  The President never authorized full disclosure of defendants' interrogation

program; he merely ended it.  Thus, the fact that the President outlawed the use of EITs and the

CIA's operation of detention centers does not warrant full disclosure of the records at issue in

this case.

Third, contrary to plaintiffs' assertion, defendants may redact portions of the detainees'

statements that would expose "intelligence sources and methods."  It is within defendants' broad

discretion to determine "whether disclosure of information may lead to an unacceptable risk of

compromising the . . . intelligence-gathering process."  *CIA v. Sims*, 471 U.S. 159, 180 (1985).

Here, defendants determined that full disclosure of the detainees' statements would reveal

"intelligence sources and methods" and "reasonably could be expected to result in serious or

exceptionally grave damage to the national security."  (Hilton Decl. ¶ 49.)  As a result, the Court

finds that defendants may redact portions of the detainees' statements that contain classified

information.

Accordingly, the Court holds that the redacted information qualifies as "intelligence

sources and methods."  Plaintiffs have not demonstrated that the specific information redacted

has been publicly disclosed.  In addition, the fact that EITs and the CIA's detention facilities are

no longer in use does not mean that information obtained from their use does not constitute

"intelligence sources and methods."  Last, defendants may properly redact portions of the

detainees' statements that they determine contain "intelligence sources and methods."

> 2.   **Disclosure of the Detainees' Accounts of Interrogation and Imprisonment**
>
>      **Reasonably Could Be Expected to Result in Damage to National Security**

Plaintiffs also argue that Exemption 1 does not apply because defendants have not

demonstrated that releasing the detainees' statements would damage national security when the

details of their interrogation and imprisonment have been publicly documented.  According to

plaintiffs, defendants only seek to withhold the information to "conceal violations of law" or

"prevent embarrassment," which is in violation of Exec. Order No. 12,958, § 1.7(a)(1)-(2).

The Court finds that defendants have shown that damage to national security would

reasonably result if the detainees' statements were disclosed, and that defendants did not classify

portions of the detainees' statements to conceal violations of the law or prevent embarrassment.

As discussed above, defendants reprocessed all documents responsive to plaintiffs' FOIA request

in light of the President's disclosure of the OLC memoranda.  The President's disclosure released

only general information about defendants' interrogation program.  The redacted information,

however, relates only to specific information that has not yet been disclosed to the public because

of the damage its release would cause to national security.  (*See* Hilton Decl. ¶¶ 44, 53-72.)  This

Court is in no position to second-guess defendants' determination that disclosure of detainees'

statements would result in damage to national security.  *See Weissman v. CIA*, 565 F.2d 692, 697

(D.C. Cir. 1977) ("Few judges have the skill or experience to weigh the repercussions of

disclosure of intelligence information.").

In addition, plaintiffs have not demonstrated that defendants classified the information in

order to conceal violations of the law.  Ms. Hilton swore in her declaration that defendants did

not have an improper motive in classifying the information sought by plaintiffs.  (Hilton Decl. ¶

45.)  Plaintiffs have offered no evidence contrary to Ms. Hilton's statement.

Accordingly, the Court concludes Exemption 1 applies to these records.  Defendants

disclosure of the detainees' accounts of interrogation and imprisonment reasonably could be

expected to result in damage to national security, and defendants did not classify the information

to conceal violations of the law or prevent embarrassment.

* * *

In light of the above discussion, the Court holds that defendants properly invoked FOIA Exemptions 1 and 3.  The withheld information qualifies as "intelligence sources and methods" and disclosure of the withheld information would damage national security.  Moreover, the detailed declaration demonstrates that defendants released all reasonably segregable, non-exempt portions of the documents.

B.      *In Camera* **Review Is Not Necessary**

Plaintiffs argue that *in camera* review is "plainly . . . necessary and appropriate" in light of the public disclosure of information relating to defendants' interrogation program.  *Ray v. Turner*, 587 F.2d 1187, 1191 (D.C. Cir. 1978) (per curiam). The Court, however, finds that *in camera* review is neither necessary nor appropriate.

District courts have broad discretion when determining whether to conduct *in camera* review.  *Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 20 (D.C. Cir. 1984).  In FOIA cases, courts should conduct *in camera* review only as a last resort.  *See NLRB v. Robbins Tired & Rubber Co.*, 437 U.S. 214, 224 (1978).  Indeed, *in camera* review should only occur when the court "believes that *in camera* inspection is needed in order to make a responsible de novo determination on the claims of exemption."  *Ctr. for Auto Safety*, 731 F.2d at 21 (quoting *Ray*, 587 F.2d at 1195).

Here, the Court concludes that Ms. Hilton's declaration is sufficiently detailed that *in camera* review is not necessary to conduct a *de novo* review of defendants' decision to withhold information under Exemptions 1 and 3.  The declaration states that the documents were

11

reprocessed in light of the government's disclosures about defendants' interrogation program. (Hilton Decl. ¶ 24.)  The declaration then explains why information remains redacted.  (*Id.* Parts IV-V.)  Plaintiffs make no credible claims that defendants have withheld the information in bad faith after reprocessing the documents.  Accordingly, the Court declines to undertake *in camera* review of the documents.

**C.     Defendants' Withholding Does Not Violate Plaintiffs' First Amendment Rights**

Plaintiffs' claim that defendants' withholding of certain information in the documents produced in response to their FOIA request violates plaintiffs' First Amendment right to receive information.  *See Stanley v. Georgia*, 394 U.S. 557, 564 (1969).  This argument is without merit. As this Court stated in its October 29, 2008 Memorandum, "[f]irst, there is obviously no First Amendment Right to receive classified information," and "[s]econd, were plaintiffs correct, every FOIA exemption would likely be unconstitutional."  *ACLU*, 584 F. Supp. 2d at 25. Accordingly, the Court finds that defendants have not violated plaintiffs' First Amendment Rights.

**V.     CONCLUSION**

For the reasons set forth above, the Court will grant defendants' Motion for Summary Judgment.  A separate Order shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on October 16, 2009.